MARVA TROTTER BARROW SPAULDING, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 50395, 52050, 52055. Filed December 12, 1956.

*Arthur J. Wilson, C. P. A.*, for the petitioner in Docket No. 50395.

*Aaron H. Payne, Esq.*, and *Julian B. Wilkins, Esq.*, for the petitioners in Docket Nos. 52050 and 52055.

*Thomas J. Donnelly, Jr., Esq.*, and *John E. Owens, Esq.*, for the respondent.

---

[1] The cases of the following petitioners are consolidated herewith: Docket No. 52050. The First National Bank of Chicago, Trustee of a Trust created by Marva Trotter Barrow by an Agreement dated July 7, 1949, and known on the records of the Trustee as Trust Number 38328; Docket No. 52055, The First National Bank of Chicago, Trustee of a Trust created by Marva Trotter Barrow by an Agreement dated November 21, 1947, and known on the records of the Trustee as Trust Number 36358.

PIERCE, *Judge:* The respondent determined transferee liabilities in respect of income taxes, and also deficiencies in gift tax and additions to gift tax for failure to file returns, as follows:

TRANSFEREE LIABILITY.

|  | Year | Type of tax | Deficiency of transferor | Transferee liability |
|---|---|---|---|---|
| Docket No. 52055 [1] | 1946 | Income tax | $246,055.79 | $30,773.04 |
|  | 1947 | Income tax | 3,555.51 | 444.67 |
| Docket No. 52050 [2] | 1946 | Income tax | 246,055.79 | 15,835.83 |
|  | 1947 | Income tax | 3,555.51 | 228.83 |
|  | 1948 | Income tax | 209,737.58 | 13,498.44 |
|  | 1949 | Income tax | 85,596.23 | 5,508.86 |

[1] First National Bank of Chicago, Trustee of Trust Number 36358 (dated November 21, 1947), as transferee of Joe Louis Barrow.
[2] First National Bank of Chicago, Trustee of Trust Number 38328 (dated July 7, 1949) as transferee of Joe Louis Barrow.

GIFT TAXES.

|  | Year | Type of tax | Deficiency | Addition to tax under sec. 3612 (d) (1), I. R. C. 1939 |
|---|---|---|---|---|
| Docket No. 50395 [1] | 1947 | Gift tax | $2,250.00 | $562.50 |
|  | 1949 | Gift tax | 5,855.42 | 1,463.86 |

[1] Marva Trotter Barrow Spaulding.

All the cases identified by the above-mentioned docket numbers were consolidated for trial.

The issues for decision are:

(1) Whether, in the case of each of the trusts here involved, the trustee is liable as a transferee of assets of Joe Louis Barrow, for certain portions of the latter's undisputed delinquent income taxes, on the ground that Barrow was the actual donor of the corpus of each of said trusts; and, if so, whether assessment of such transferee liabilities is barred by the statute of limitations.

(2) In the alternative, whether the petitioner Marva Trotter Barrow Spaulding, the former wife of Joe Louis Barrow, was the actual donor of the corpus of each of said trusts and is, by reason thereof, liable for gift taxes on the transfer of such corpus and also for additions to tax for failure to file gift tax returns.

### FINDINGS OF FACT.

The petitioner the First National Bank of Chicago, as trustee, is, in the case of each of the two trusts here involved, the alleged transferee of assets of Joseph Louis Barrow, also known as Joe Louis Barrow and as Joe Louis (hereinafter called Louis). Louis was the heavyweight boxing champion of the world for a period of about 11 years beginning in June 1937. He filed an individual income tax return for each of the years 1946, 1947, and 1948, with the collector of internal revenue for the third district of New York; and he also

filed such a return for the year 1949 with the collector of internal revenue for the first district of Illinois. None of the above-mentioned unpaid deficiencies in his income taxes for said years (as distinguished from transferee liabilities concerning the same) is here in dispute.

The petitioner Marva Trotter Barrow Spaulding (hereinafter called Marva), is the former wife of Louis. She filed no gift tax return for either of the years 1947 or 1949.

Marva and Louis were twice married and twice divorced. Their first marriage, on September 24, 1935, ended in divorce on March 27, 1945. Thereafter, they were remarried in 1946; and were divorced for the second time on February 15, 1949. During their first marriage, a daughter, Jacqueline Barrow, was born to them on February 8, 1943. And during their second marriage, a son, Joseph Louis Barrow, Jr. (hereinafter called Joe Louis, Jr.), was born to them on May 28, 1947.

*Facts re Trust No. 36358, Dated November 21, 1947.*

Louis entered the Army in 1942, and he continued to serve in the Armed Forces until about October 1, 1945. In the early part of 1945, while he was so serving, Marva filed suit for divorce from him. During the pendency of this suit, Louis told Marva that he was not financially able to make a substantial property settlement with her; and they executed concurrently, under date of March 26, 1945, two written agreements (hereinafter called, respectively, the settlement agreement and the manager's contract).

The settlement agreement provided in substance and so far as here material:

That, whereas the parties had agreed upon a settlement of all their marital rights and obligations, each of the parties accepted the provisions of such agreement in lieu of all dower rights; in lieu of all claims of each against the other for alimony, maintenance, and support; and also in full satisfaction of other claims and demands of each against the other, except the obligations imposed by such agreement;

That Louis relinquished to Marva all his right, title, and interest in the household furnishings and effects, other than his personal effects, and also in all bank accounts standing in Marva's name;

That Marva acknowledged that she had no right, title, or interest whatsoever in any property held in the name of Louis; or in any property or money held in the name of any person, firm, or corporation, as trustee for him;

That Marva would have the care and custody of their minor daughter Jacqueline, subject to certain consultation and visitation rights in Louis; and that Louis would pay her $200 per month for the child's support;

That, in lieu of any further provision for the maintenance, support, and alimony of Marva, Louis would execute simultaneously with such settlement agreement, the manager's contract, of which a copy was attached and made a part of the settlement agreement; and

That Marva, in the event she were granted a decree of divorce in the pending divorce proceeding, would, in consideration of said covenants and agreements, agree:

To create a trust fund in a suitable Chicago Bank or Trust Company, to be mutually agreed upon, to be in the name of Joe Louis Barrow and Marva Trotter Barrow for the benefit of JACQUELINE BARROW, the minor child of the parties hereto, and to pay into the said trust fund a sum, equal to fifty per cent (50%) of all monies received by the said MARVA TROTTER BARROW growing out of the manager's contract, heretofore referred to and made a part hereof.

It was further mutually agreed that, if at any time during the term of such manager's contract there should be any breach or default by Marva in performing the above-mentioned provisions relating to the minor child, then such manager's contract could, at the option of Louis, be immediately revoked and terminated by him.

The said manager's contract, which was physically attached to and made a part of the settlement agreement, provided in substance and so far as here material:

That Louis engaged Marva as his business manager, or co-manager, for a period of 5 years to commence when Louis received his discharge from the Army, but in any event not earlier than June 1, 1945;

That Marva agreed to exert herself for the profit, benefit, and advantage of Louis, and to perform such duties as are generally required of a manager of a professional boxer;

That Marva understood that Louis was then indebted to the Government of the United States and to other named creditors in an aggregate amount which might exceed $200,000; and that no money should be deemed earned, due, and owing to her under the manager's contract until after the aggregate amount of said indebtedness had first been deducted and paid from the moneys derived by Louis from professional boxing contests and other sources in connection therewith;

That Louis agreed to pay Marva 25 per cent of all sums derived by him from any services rendered in professional boxing contests during the term of the manager's contract, and from radio broadcasting, motion pictures, and television pictures in connection therewith; provided, however, that such percentage would be payable only after deduction from the proceeds of the foregoing of a sum sufficient to pay all the above-mentioned indebtedness of Louis to the extent of $200,000, and also after deduction of all expenses incurred by Louis in connection with any boxing contest in which he engaged during the term of such manager's contract;

That the manager's contract could not be sold or assigned without Louis's written consent;

That Marva would not be required to devote her entire time and attention in and about the business of Louis;

That Louis might, without cost or expense to Marva, engage a co-manager to render the same services which she was required to render under the manager's contract; and

That said manager's contract would, at all times, be subject to the terms of a prior existing agreement between Louis and one Michael S. Jacobs, under which the latter had exclusive promotional rights of all boxing interests in which Louis might engage.

On March 27, 1945, which was the day following the execution of said settlement agreement and said manager's contract, Louis and Marva were divorced by the Superior Court of Cook County, Illinois. Under the terms of the divorce decree, Marva was given custody of the minor daughter, Jacqueline, and the settlement agreement between the parties was approved.

In June 1946, Louis won a championship fight with Billy Conn; and, shortly thereafter, he paid Marva the sum of $60,000 in cash, out of his proceeds of said fight, pursuant to the provisions of the above-mentioned manager's contract. Marva deposited this sum in her personal account at the Drexel National Bank in Chicago; and thereafter she placed approximately half of this amount in a separate account which was called the Jacqueline Barrow account. She thereupon proceeded to investigate various banks and trust companies, with a view to selecting a suitable trustee for the trust which was to be created for the daughter, Jacqueline, pursuant to the settlement agreement. Marva, in her income tax return for 1946, did not include any of said $60,000 in her gross income.

On November 21, 1947, an irrevocable trust for the benefit of Jacqueline was created with the petitioner the First National Bank of Chicago, as trustee, which was known on the records of the trustee as Trust No. 36358. Marva was described therein as the "Donor"; and she, on the above date, delivered to the trustee as the initial corpus of the trust the sum of $30,000. This payment was made by a cashier's check of the Drexel National Bank in which she had previously deposited the $60,000 received from Louis; and all or substantially all of said $30,000 was obtained from the so-called Jacqueline Barrow account which she had established at said bank.

The preamble of said trust agreement read as follows:

Under date of March 26, 1945, the Donor entered into a property settlement agreement with JOSEPH LOUIS BARROW, under the terms of which it was provided that she should establish a trust with a bank or trust company in Chicago, Illinois, of one-half (½) the net proceeds received by her under the manager's contract referred to in said agreement for the benefit of her daughter,

JACQUELINE BARROW. Said agreement was approved by the Superior Court of Cook County, and this trust is established in pursuance of that agreement. Accordingly, the Donor does hereby assign, transfer and pay over to the Trustee the sum of $30,000, and the Trustee acknowledges receipt thereof and hereby agrees to hold, manage and distribute the same and all subsequent additions that may be made thereto as a Trust Estate upon the following terms and conditions:

Prior to the creation of said trust and under date of November 1, 1947, the trustee procured from Louis a letter which read as follows:

GENTLEMEN:

This is to advise you that I have seen and approved the trust agreement with you created by my wife, Marva Trotter Barrow for the benefit of our daughter, Jacqueline, and agree that the same is in compliance with the terms of my property settlement agreement with Mrs. Barrow.

(Signed) JOE LOUIS BARROW

Later, under date of December 20, 1950, the trustee (petitioner in Docket No. 52055) wrote a letter to the respondent, in which it described the circumstances under which the trust was created and the reasons for procuring the above-quoted statement from Louis. This letter stated, in part, as follows:

At the time this trust was negotiated, Mrs. Spalding exhibited to us a property settlement agreement with her former husband, Joseph Louis Barrow, and a certified copy of a Decree of the Superior Court of Cook County approving that settlement.

Under the terms of that settlement agreement, Mrs. Spalding received certain monies from Mr. Barrow, charged with the obligation of establishing an irrevocable trust for the benefit of their daughter, Jacqueline Barrow.

Because the monies had previously been paid to Mrs. Barrow and it was necessary that there be a Donor of the trust, she was designated in the agreement in that capacity.

In order to be sure that Mr. Barrow accepted the proposed agreement as being in satisfaction of this part of Mrs. Spaulding's obligation under the terms of the property settlement agreement, he delivered to us a letter approving the agreement and stating that it was in compliance with the terms of his property settlement agreement with her.

We asked for and secured this letter because we considered Mrs. Spaulding was not, as in the normal case, making a gift by way of trust of funds which she was free to keep or give away, but because we understood that she was required to create the trust and wanted assurance that the trust she proposed to create was satisfactory to the other party to the contract from whom the funds going into the trust had, we were told, originally been received.

We understand that Mrs. Spaulding's counsel has shown you the agreement and Decree on which this trust was based and this letter is merely to confirm our understanding as Trustee under the agreement that this trust was, as appears on the first page thereof, executed pursuant to that agreement and was not accepted by us without knowledge of the background.

Because the law imposes a definite obligation on any trustee who receives money in an irrevocable trust to file a Donee's information return, we did file such a return in the name of Marva Trotter Barrow. This was not intended to be construed as a conclusion on our part that she was, or was not, a Donee subject to gift tax liability under the terms of the Internal Revenue Code.

Marva did not file a gift tax return for the year 1947, in respect of the above-mentioned $30,000 which she had delivered to said trustee. In creating the trust, she regarded Louis to be the actual donor, and herself to be merely his agent; and accordingly she thought, and was advised by her attorney, that it was unnecessary for her to file a gift tax return respecting the transfer.

Marva was not licensed to act as a manager of Louis in connection with his boxing activities; and she at no time, either in 1946 or in any subsequent year, performed any substantial service for him as manager. The $30,000 which she delivered, on November 21, 1947, to the First National Bank of Chicago, as trustee of Trust No. 36358, was all received by her from Louis without consideration, out of his personal funds, for the specific purpose of establishing such a trust; and she delivered said sum to the trustee in fulfillment of that obligation. Said $30,000 was at no time owned or held by Marva for her own benefit or as her own personal property.. Louis was the actual donor of said trust; and he was the actual transferor of said $30,000 to the trustee on November 21, 1947. The trustee did not pay or deliver any consideration for the transfer to it of said amount.

### Facts re Trust No. 38328, Dated July 7, 1949.

In December 1947, Louis organized an Illinois corporation known as Joe Louis Enterprises, Inc., with capital stock of $50,000 divided into 500 shares. Four hundred and ninety-eight of these shares were issued to Louis, and were held by him at all subsequent times here material; and the 2 remaining shares were issued, respectively, to two of Louis's attorneys, in order to qualify them as directors. The principal purposes of the corporation were to market motion pictures of Louis's fights, and also to assist Louis in liquidating his personal liabilities out of his anticipated earnings from prize fights and from said motion pictures; but, beginning in the latter part of 1948, the corporation also operated a trade school for automobile mechanics. Shortly after its organization, the corporation purported to "assume" $115,635.36 of Louis's personal debts and obligations, including about $82,000 of his Federal income tax liabilities; and, in addition, it purported to "take on" the above-mentioned manager's contract between Louis and Marva. The opening balance sheet of the corporation was as follows:

| Assets | | Liabilities | |
|---|---|---|---|
| Cash | $5,000.00 | Accounts payable | $115,635.36 |
| Contracts and | | Stockholders' loans | 5,000.00 |
| franchises | 165,635.36 | Capital stock | 50,000.00 |
| Total assets | $170,635.36 | Total liabilities | $170,635.36 |

The asset described as "Contracts and franchises" purported to represent an anticipatory assignment of Louis's future earnings from

prize fights and motion pictures thereof; but actually the corporation paid nothing therefor, and such "asset" was conceded to be merely a balancing entry employed to equalize the purported assets and the purported liabilities.

During the year 1948, the corporation did liquidate, out of the moneys which it received from Louis's fights and from the motion pictures, substantial portions of Louis's personal debts and income tax liabilities, and made payments to Marva on account of the manager's contract; and it also permitted Louis to withdraw funds for his personal use when moneys were available. Louis controlled the corporation. The respondent, in his examination of the income tax returns of Louis and of the corporation for the year 1948, determined that approximately $104,000 of the corporation's purported income for said year was actually personal income of Louis; and this determination was not contestsd.

In December 1947 Marva was unable to collect amounts which she believed to be due her from Louis; and she therefore instituted legal proceedings and attached Louis's share of the purse from his fight with Joe Wolcott. As the result of such attachment, she received $27,000. She regarded this amount to be in repayment of loans and advances which she had theretofore made to Louis; and she did not report any of the same as taxable income.

In the year 1948, Marva received the following amounts from proceeds of Louis's fights and related activities:

From Joe Louis Enterprises, Inc. This was one of Louis's obligations which the corporation liquidated, as above stated_____ $36,780.20

From proceeds of Louis's fights which were allocated to his managers, John Roxborough and Marshall Miles, and to Marva Barrow _____ 31,781.74

Total _____ $68,561.94

All the above amounts were paid by or on behalf of Louis, pursuant to the above-mentioned settlement agreement and manager's contract; and Marva delivered no consideration therefor. It was understood between Louis and Marva that the terms of said agreement and contract, as executed on March 26, 1945, continued in full force and effect, except as modified by a supplemental agreement between them that 50 per cent of the amounts paid by Louis to Marva would be used to create trusts not only for the daughter, Jacqueline, but also for Joe Louis, Jr., who was born subsequent to the execution of the original agreements. Said supplemental agreement was given recognition also in connection with Marva's second divorce from Louis in February 1949, at which time Louis informed her that he had nothing else to give in settlement. Marva reported only half of the above-mentioned $68,561.94, or $34,280.97, as personal income to her for the year 1948.

The said amounts which Marva received from Louis in 1948, including the portion thereof which was to be used by her in creating trusts for the children, were expended by her in rehabilitating and improving certain apartment house real estate in Chicago, which she owned personally. After completing such improvements, she conveyed the title to said real estate to the Trust Company of Chicago, as trustee for her benefit; and she then obtained from such trustee its negotiable promissory note made payable to bearer in the amount of $34,000. Said trustee's note was dated January 10, 1949; was payable on or before January 10, 1959, with interest at the rate of 4 per cent per annum, payable semiannually; and was secured by a trust deed executed by said Trust Company of Chicago, as trustee, on the apartment house real estate above mentioned. After obtaining said promissory note, Marva, on the same date of January 10, 1949, filed a verified petition in the Probate Court of Cook County, Illinois, in a proceeding entitled "IN THE MATTER OF THE ESTATE OF JACQUELINE LOUIS BARROW AND JOE LOUIS BARROW, JR., MINORS," in which she made the following representations:

Your Petitioner, MARVA TROTTER BARROW, Guardian of JACQUELINE LOUIS BARROW and JOE LOUIS BARROW, JR., respectfully represents to the Court that she is the acting Guardian of the minor children involved herein, duly appointed by the Probate Court of Cook County.

Your Petitioner further represents that all funds that have been received under an agreement between herself and her husband, JOE LOUIS BARROW for the year 1948 were placed in trust for the benefit of the minor children herein as provided.

Your Petitioner further represents that during the year 1948 certain properties described as 4320 South Michigan Avenue in trust with the Trust Company of Chicago, as Trustee, were rehabilitated and improved at an outlay of upwards of $69,000.00; and that revenue from the said building has been increased from approximately $350.00 per month to $1000.00 and upwards per month.

About 6 months later, under date of July 7, 1949, Marva delivered and transferred the above-mentioned $34,000 promissory note, together with the trust deed securing the same, to the petitioner, the First National Bank of Chicago, as trustee of Trust No. 38328, to provide the corpus for an irrevocable trust for the benefit of Joe Louis, Jr. The trust agreement, like that of the trust previously created for the benefit of the daughter, Jacqueline, designated Marva as the "Donor"; and the terms thereof were substantially the same as those of the prior trust agreement for the benefit of Jacqueline. The trustee delivered no consideration for the transfer of it of said promissory note.

The value of the apartment house real estate, which was mortgaged to secure said trustee's promissory note for $34,000, was at least $50,000; and the value of said note at the time of its delivery and transfer to the First National Bank of Chicago, as trustee, was $34,000 plus accrued and unpaid interest thereon from January 10,

1949, to July 7, 1949, in the amount of $668.67, making a total value of $34,668.67. This total value was determined also by the trustee after appraisal of the security for the note and was entered in its trust accounts; and this also was the value which the First National Bank of Chicago, as trustee, assigned to the gift on its donee's information return of gifts in respect of said trust for the year 1949.

Prior to the creation of the above-mentioned trust for Joe Louis, Jr., Marva discussed the same with Louis; and he indicated that he had confidence in her and that whatever arrangements she made would be satisfactory to him. Also Marva later told Louis that the trust had been created, and informed him of the source from which the corpus had been obtained. Louis told Marva that he would pay the gift tax on the transfer by which the trust had been created. At the time the trust was created, Marva considered Louis to be the actual donor thereof.

Said trust for the benefit of Joe Louis, Jr., was created pursuant to the terms of the settlement agreement and manager's contract between Louis and Marva, as modified by their supplemental agreement as to Joe Louis, Jr. The promissory note of the Trust Company of Chicago, which was used to provide the corpus of said trust, represented a segregated investment of $34,000, which had been paid by Louis to Marva in accordance with said agreements and for the specific purpose of creating such a trust. Marva at no time owned or held such funds, or such promissory note, for her own benefit; and Louis retained the beneficial interest therein until the note was delivered and transferred to the First National Bank of Chicago, as trustee of the irrevocable trust for Joe Louis, Jr., on or about July 7, 1949. Louis, and not Marva, was the actual donor of said trust; and he was the actual transferor of the corpus thereof.

### Facts re Solvency of Louis.

At the time when Louis was discharged from the Army on about October 1, 1945, he had no substantial assets, and had liabilities of more than $240,000, including loans and advances of: $131,976.93 from the 20th Century Sporting Club; about $60,000 from Michael S. Jacobs, the fight promoter mentioned in the above-described manager's contract; about $40,000 from John Roxborough, who was one of Louis's managers and representatives; and about $11,000 from Marshall Miles, who was another manager. Louis retired as heavyweight boxing champion of the world in the fall of 1948 or the early part of 1949. During 1946 through 1949, he engaged in several fights which yielded large purses; but only 50 per cent of his share thereof was retained by him personally, and the remaining 50 per cent was disbursed for managers and training expenses. During the

same years, substantially all of his income came from his boxing activities; he received no gifts or inheritances; and his personal living expenses were about $58,000 per year. During said years, he made numerous gifts to friends and members of his family; and he also made several investments which proved to be improvident. In 1948 the corporation, Joe Louis Enterprises, Inc., which he organized, assisted in managing his income and in liquidating portions of his indebtedness; but by July 1949 part of said indebtedness was still unsatisfied, and this corporation made no further payments thereon during the remainder of that year. At the time of Marva's first divorce from Louis, the only thing that he was able to give her in settlement was the agreement to share his potential future earnings; and, at the time of their second divorce in February 1949, he again told her that he had nothing to give her except the continuance of such agreement.

At the end of the calendar year 1946, Louis had at least the following liabilities:

| | |
|---|---:|
| Unpaid deficiency in income tax for 1946 | $246, 055. 79 |
| Due Marshall Miles, approximate minimum balance on personal loan | 14, 000. 00 |
| Due John Roxborough, approximate minimum balance on personal loan | 20, 000. 00 |
| Total | $280, 055. 79 |

His only substantial assets on that date (exclusive of his heavyweight boxing championship which had no value that may be used in determining his solvency) consisted of: (1) Real estate in Detroit that was improved with a house occupied by members of his family, which he represented as of May 31, 1950, to have a fair market value of $10,000; (2) an annuity which paid him $52 per month, and which had an alleged value of $10,000; (3) his beneficial interest in the $30,000 which he had theretofore paid to Marva for use in creating the trust for Jacqueline; (4) cash claimed to have been in the amount of $5,000; and (5) stock of Supreme Life Insurance Company acquired at a cost of $500. The maximum total value of such assets was $55,500.

Between December 31, 1946, and November 21, 1947, the date on which the trust for Jacqueline was created, none of the above liabilities were discharged, and additional liabilities were incurred as follows: A loan from the 20th Century Sporting Club in the amount of $59,362.37, and accrued interest on the 1946 income tax deficiency. During this same period, there was no substantial increase in the value of Louis's assets. He testified that when Joe Louis Enterprises, Inc., was organized on December 1, 1947, he was not financially able to satisfy his liabilities.

Louis was insolvent on November 21, 1947, when the trust for the benefit of the daughter, Jacqueline, was created, and when the $30,000 was transferred to the trustee of said trust, as the initial corpus thereof.

At the end of the calendar year 1948, Louis had at least the following liabilities, exclusive of accrued interest:

Unpaid deficiency in income tax for 1946_____ $246,055.79
Unpaid portion of returned income tax for 1947_____ 57,067.48
Unpaid deficiency in income tax for 1947_____ 3,555.51
Unpaid deficiency in income tax for 1948_____ ·209,737.58
Due 20th Century Sporting Club on personal loan_____ 20,896.47
Due Marshall Miles on personal loan_____ 14,000.00

Total (exclusive of interest on above tax liabilities) _____ $551,312.83

As of the same date, his only substantial assets consisted of the following:

Real estate in Detroit (as above described) _____ $10,000
Annuity (as above described)_____ 10,000
Stock of Supreme Life Insurance Company (as above described) _____ 500
Beneficial interest in the $34,000 which he had theretofore paid to Marva
   for use in creating the trust for Joe Louis, Jr_____ 34,000
Stock in All-American Drinks Corporation, manufacturer of Joe Louis
   Punch, at cost_____ 35,000

Total _____ $89,500

Louis testified that he knew of no additional assets held by him as of said date.

As of July 7, 1949, the date on which the trust for Joe Louis, Jr., was created, the amount of Louis's liabilities were the same as those at the end of the year 1948, except that his loan from the 20th Century Sporting Club had been reduced to $19,591.14, and the amount of the accrued interest on his tax liabilities had increased. As regards his assets on said date, he still had the real estate in Detroit, the $10,000 annuity policy, the stock of the Supreme Life Insurance Company, and the beneficial interest in the money paid to Marva for creation of the trust for Joe Louis, Jr., all as above mentioned.[2] Louis stated in his testimony that, in July 1949 and also at the time of the trial, he did not have $400,000 which could be applied against his Federal tax liabilities.

Louis was insolvent on July 7, 1949, when the trust for the benefit of Joe Louis, Jr., was created and the $34,000 note was transferred to the trustee of said trust, as the initial corpus thereof.

---

[2] Louis also held, on July 7, 1949, his shares of stock of Joe Louis Enterprises, Inc. This stock, however, is deemed to have had no value as of said date; for, after eliminating the above-mentioned balancing asset entry of $165,635.36, the corporation's liabilities greatly exceeded its assets. In July 1949 it had not yet paid all of Louis's debts; and there was no liquidation of the same during the balance of said year.

On October 4, 1948, respondent issued a notice and demand to Louis for payment of his delinquent income taxes for 1947; and upon Louis's failure to make payment, a warrant for distraint was issued and a lien was filed, both under date of December 7, 1949. The only amounts collected from Louis pursuant to such action were $2,983.76 on December 7, 1949, and $1,000 on January 4, 1950.

In about December 1949, Louis's attorneys decided that the only way for him to meet his delinquent tax liabilities was for him to file an offer in compromise. The first such offer was filed on June 20, 1950; and amended offers in compromise were thereafter filed on October 2, 1950, January 9, 1951, February 4, 1952, and March 24, 1953. None of these offers were at any time accepted.

Prior to filing the first of said offers in compromise, Louis submitted to the respondent a verified statement of his financial condition as of May 31, 1950, in which he represented that the total fair market value of all his assets as of said date was $35,950, and that his total liabilities as of said date, exclusive of his Federal tax liabilities, were $96,500. In subsequently filed statements of the same character, he represented his assets and liabilities to be as follows:

| Effective date | Assets | Liabilities |
| --- | --- | --- |
| June 30, 1950 | $35, 950. 00 | [1] $96, 000 |
| Nov. 30, 1951 | 18, 090. 00 | [1] 41, 000 |
| Jan. 20, 1955 | 17, 633. 33 | [2] 545, 100 |
| Mar. 1, 1955 | 63, 753. 14 | [3] 478, 300 |

[1] Exclusive of tax liabilities.
[2] Including estimated income and gift tax liabilities of $500,000.
[3] Including estimated income tax liabilities of $400,000.

In about December 1950, a representative of the respondent commenced an investigation of Louis's financial condition, and he completed such examination on or about April 3, 1953. After examining the nature and value of Louis's assets and consulting with Louis regarding the same, he determined that the total forced sale value of Louis's assets as of the last mentioned date (exclusive of potential earning power) was $71,635.41, and that Louis's total Federal tax liabilities as of said date were $639,319.73, exclusive of interest.

The notices of transferee liability here involved were both issued to the First National Bank of Chicago, as trustee of Trust No. 36358 and Trust No. 38328, on December 3, 1953. On said date, and at all subsequent times to and including the time of the trial herein, the excess of the amount of Louis's liabilities over the amount of his assets was substantially greater than the aggregate amount of the transferee liabilities determined in said notices.

*Facts re Statute of Limitations.*

The Commissioner of Internal Revenue and Louis consented in writing (on Treasury Form 872) to extensions of the period of

limitation on assessment of Louis's income taxes for his taxable years ended December 31, 1946 to 1949, inclusive, as follows:

| Taxable year | Limitation per return | Consent dated | Limitation per consent |
|---|---|---|---|
| 1946 | Mar. 15, 1950 | Jan. 24, 1950<br>Apr. 6, 1951<br>Apr. 25, 1952<br>Mar. 11, 1953 | June 30, 1951<br>June 30, 1952<br>June 30, 1953<br>June 30, 1954 |
| 1947 | Mar. 15, 1951 | Nov. 15, 1950<br>Apr. 25, 1952<br>Mar. 11, 1953 | June 30, 1952<br>June 30, 1953<br>June 30, 1954 |
| 1948 | Mar. 15, 1952 | Jan. 30, 1952<br>Mar. 11, 1953 | June 30, 1953<br>June 30, 1954 |
| 1949 | Mar. 15, 1953 | Mar. 11, 1953 | June 30, 1954 |

All of the above-mentioned consents were signed by Louis personally, except that which was executed on November 15, 1950, in respect of the taxable year 1947; and this was signed in the name of Louis by Truman K. Gibson, Jr. Such consent was executed by Gibson under a power of attorney which he then held, which Louis had theretofore signed, verified under oath, and delivered to the respondent. Said power of attorney read as follows:

STATE OF ILLINOIS  
COUNTY OF COOK  } ss

### POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that I, JOE L. BARROW, of the City of Chicago, County of Cook and State of Illinois, DO BY THESE PRESENTS, Make, Constitute and Appoint, THEODORE A. JONES, Certified Public Accountant, and TRUMAN K. GIBSON, JR., Attorney At Law, of the City of Chicago, County of Cook and State of Illinois my true and lawful agents to appear for me and represent me before the Treasury Department in connection with my Federal Tax for the year 1946-7, with full power of substitution and revocation, giving my said agents full power to do everything whatsoever requisite and necessary to be done in the premises, and to receive refund checks, execute waivers of the statute of limitations, and to execute closing agreements, as fully as I might do if personally present, at any time subsequent to the date hereof and prior to the revocation hereof.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 21st day of June, A. D. 1950.

/s/ Joe L. Barrow [SEAL]  
JOE L. BARROW

Subscribed and sworn to before me this 21st day of June, A. D. 1950

/s/ Delores A. Mann  
*Notary Public*  
[NOTARY SEAL]

Signed, Sealed and  
Delivered in presence of:

*Witnesses*

At the time of the issuance of each of the notices of transferee liability here involved, the period of limitation for assessment of Louis's income tax for each of the years 1946 through 1949, and also the period of limitation for assessment of the liability of a transferee in respect of such taxes, had not expired.

## OPINION.

### I.

The basic issue, in each of the two trust cases here involved, is whether the trustee is liable as a transferee of assets of Joe Louis Barrow (herein called Louis), for certain portions of the latter's undisputed delinquent income taxes. The determination of such issue, in each case, requires an answer to the following questions:

(1) Was Louis the actual donor and transferor of the property transferred to the trustee as the initial corpus of the trust? And, if he was, what was the value of such property at the time of its transfer?

(2) Assuming that Louis was the donor, was he insolvent at the time of the transfer, or did the transfer render him insolvent?

(3) At the time when the two notices of transferee liability here involved were issued, did Louis's liabilities exceed his assets by an amount which was greater than the aggregate of the transferee liabilities determined in said notices?

All the foregoing questions are factual. A detailed statement of the facts upon which the answers depend, as well as our ultimate conclusions regarding such facts, have been set forth above in our findings.

The burden of proving that the trustee is liable as a transferee of assets of Louis is on the respondent. Sec. 1119 (a), I. R. C. 1939. It is our opinion that the respondent has sustained such burden.

In Docket No. 52055, involving the trust created for the daughter, Jacqueline, we have found as a fact that Louis delivered to his wife, Marva, without consideration and out of his own personal funds, the sum of $60,000; and that 50 per cent (or $30,000) of such sum was, under an agreement between them, to be applied by Marva in creating a trust for their daughter. Marva deposited said $30,000 in a separate bank account of hers, which she called the Jacqueline Barrow account. Thereupon, after investigating various potential trustees, she caused an irrevocable trust to be created with the First National Bank of Chicago, as trustee for the benefit of Jacqueline; and she, at the same time, delivered to the trustee without consideration, said $30,000 which she had received for such purpose. Marva at no time had any personal beneficial interest in the $30,000; she considered that, in

creating the trust, she was acting merely as Louis's agent; and the trustee not only had knowledge that she was so acting, but also sought and obtained Louis's approval before accepting the trust. We have heretofore found as a fact, and we here hold, that Louis was the actual donor of said trust known as Trust No. 36358, and that he was the actual transferor of said $30,000 to the trustee on November 21, 1947.

In Docket No. 52050, involving the trust created for Joe Louis, Jr., the facts are similar, except that the funds which Louis delivered to Marva for the purpose of creating this trust were first invested by her in income-producing real estate, in respect of which she obtained a corporate trustee's interest-bearing note, secured by a trust deed covering such real estate; and she then delivered such note to the First National Bank of Chicago, as trustee, to provide the initial corpus of the trust for Joe Louis, Jr. The trustee, after receiving the note and obtaining an appraisal of the collateral security therefor, determined that the note had a value equal to its face amount, plus the accrued interest thereon; and we, likewise, have found that such was its value. Also, we have found as a fact, as in the case of the other trust, that Louis was the actual donor and the actual transferor of the property which constituted the initial corpus of this second trust, known as Trust No. 38328. We here adopt said findings as our holding.

As regards the solvency of Louis, we have heretofore found as a fact, and here hold, that he was insolvent at the time when each of the two above-mentioned transfers to the trustee was made; and we have further found as a fact, and here hold, that on December 3, 1953, when the two notices of transferee liability here involved were issued, and also at all subsequent times up to the date of the trial herein, Louis's liabilities exceeded his assets by an amount which was substantially greater than the aggregate transferee liabilities determined in said notices.

In making these holdings regarding Louis's insolvency, we have not overlooked the substantial amounts of income which he derived from his boxing activities. The evidence does not disclose precisely where this income went; and it is not for us to conjecture. A letter of Louis's attorneys, attached to a statement of his financial condition which was filed with the respondent on about January 21, 1950, states in part as follows:

As the enclosed schedules show, Louis has no quick assets of any consequence. He has made large sums and he has spent them. Where and how we do not completely know because Louis himself doesn't have this knowledge. At an early age he was schooled in profligacy instead of thrift. From the age of 19 on, he was surrounded by men of wealth who made money quickly and easily and spent it the same way. During his championship period, no brakes were applied to his spending. To the contrary large sums were constantly advanced him by the 20th Century Sporting Club, the promoting organization which held an exclusive services contract.

There are certain other contentions of counsel for the trustee which require consideration. One of these is that Marva was not obligated to create the trusts, because her contract to create them was executed in connection with her divorce from Louis in 1945, whereas one of the trusts was created after their remarriage, and the other was created after their second divorce. We think such contention is without merit. Although the remarriage may have terminated any obligation to pay alimony, it did not terminate the obligation, which the parties mutually agreed should continue in full force and effect, that Marva would apply 50 per cent of the moneys paid to her by Louis for the specific purpose of creating trusts for their children. This mutual agreement prevented Marva from obtaining any personal interest in that portion of the moneys, and subjected such portion to a charge that it would be applied for the purpose for which it was paid. The parties themselves continued to recognize, both after their remarriage and after their second divorce, that such obligation was still binding; and Marva stated in her testimony that both of the trusts were created pursuant to the same. Louis and Marva recognized also, in connection with their second divorce, that the agreement was to continue. Moreover, as we have heretofore pointed out, the trustee accepted the first trust, after the remarriage of Louis and Marva, with knowledge that it was being created in fulfillment of Marva's obligation; it sought and obtained Louis's written acknowledgment of that fact; and it executed the trust instrument which recited, in its preamble, that the trust was established in pursuance of the 1945 agreement.

The objection is made that the deficiency in Louis's 1946 income tax had not been determined or assessed at the time when the trust for Jacqueline was created and the transfer to the trustee thereof was made. In *J. Warren Leach*, 21 T. C. 70, 75, we said:

The transferee is retroactively liable for transferor's taxes in the year of transfer and prior years, and penalties and interest in connection therewith, to the extent of the assets received by him even though transferor's tax liability was unknown at the time of the transfer. *Scott* v. *Commissioner*, 117 F. 2d 36; [and other authorities].

We here follow that decision.

It is argued that the transferee liabilities were determined after the expiration of the applicable period of limitation, on the ground that the waivers or consents which were executed by or on behalf of Louis are not effective against the transferee. Such argument reflects a misapprehension of the limitation provisions of the Internal Revenue Code (1939). Sections 275 (a) and 276 (b) of the Code provide, in substance, that the period of limitation upon assessment of income taxes shall be 3 years after the return was filed, plus such additional periods as the Commissioner and the taxpayer have agreed upon in

writing. Section 311 (b) of the Code provides further that the period of limitation for assessment of any liability of an initial transferee of the property of a taxpayer shall be within 1 year after the expiration of the period of limitation for assessment against the taxpayer. In the instant case, the liabilities of the transferee were determined, without use of the additional 1-year period, within the period of limitation upon assessment against the taxpayer, Louis.

Finally, it is contended that the initial waiver or consent respecting Louis's 1947 income tax, which was executed on behalf of Louis by Truman K. Gibson, Jr., under date of November 15, 1950, is invalid on the ground that Gibson was only one of the two agents named in Louis's power of attorney; and hence that Gibson alone had no authority to execute the consent. Said power of attorney, which has been set forth in our Findings of Fact, contains no requirement that the two agents named therein must act jointly. We have heretofore held that, in such circumstance, any of the designated agents may act alone under the power, in executing a waiver or consent. *J. E. Hample*, 12 B. T. A. 342, 347.

After consideration of the foregoing authorities and all the evidence herein, we hold that, under the provisions of section 311 of the 1939 Code, the trustee of each of the trusts here involved, designated as Trust No. 36358 and Trust No. 38328, is liable as a transferee of property of Louis, in respect of his delinquent income taxes, to the extent of the value which we have determined for the property transferred to such trustee as the initial corpus of such trust, together with interest on the amount of such liability as provided by law.

## II.

In Docket No. 50395, we have heretofore found as a fact, and we here hold, that the petitioner Marva Trotter Barrow Spaulding was not the actual donor of either of the trusts here involved, or the actual transferor of the property which became the corpus of either of said trusts. Accordingly, we hold that she is not liable either for the deficiencies in gift tax, or for the additions to tax, which the respondent determined against her.

> *In Docket Nos. 52050 and 52055 decisions will be entered under Rule 50.*
> *In Docket No. 50395 decision will be entered for the petitioner.*