**Aurore B. BENOIT, Transferee, Petitioner,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 5117.**

United States Court of Appeals First Circuit.

Nov. 16, 1956.

Walter F. Gibbons, Providence, R. I., with whom Daniel H. Morrissey and Donald A. Delahunt, Providence, R. I., were on brief, for petitioner.

David O. Walter, Atty., Dept. of Justice, Washington, D. C., with whom Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., were on brief, for respondent.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is a petition brought by Aurore B. Benoit for review of a decision of the Tax Court of the United States entered January 6, 1956, determining an unpaid liability of $53,611.68, together with interest thereon as provided by law, on the part of this petitioner as transferee of the assets of River Mills, Inc., for deficiencies of that corporation in excess profits tax for 1944 and income and excess profits tax for 1945.

The taxpayer-transferor corporation, River Mills, Inc., (hereinafter referred to as River Mills or the corporation) organized under the laws of Rhode Island, was engaged in the manufacture and sale of woolen yarn. Of the 2,000 shares of common stock of the corporation, petitioner in 1945 owned 16 shares and her husband, Theophile Guerin, owned 1,978 shares. Of the 1,212 shares of preferred stock, petitioner owned 374 shares and her husband the balance, 838 shares. The petitioner acquired some of her stock prior to her marriage to Guerin in 1934 and paid for all of it with her own funds.

Petitioner had been in Guerin's employ for many years before 1934. Prior to the marriage petitioner's name was Aurore B. Benoit and she continued to use that name thereafter. Petitioner testified that throughout her years of marriage she was economically and socially independent of her husband, maintaining separate bank accounts and receiving no support from him. Although living in the same home, petitioner testified they had never shared the same quarters.

In 1945 Guerin was president and petitioner was secretary-treasurer and office manager of River Mills. Both were members of its board of directors.

At separate meetings held December 20, 1945, the shareholders and directors of the corporation authorized the sale of all the machinery, "equipment, supplies, office furniture, furnishings and all other personal property of every kind and nature belonging to this corporation," together with certain inventory of the corporation to Shawmut Woolen Mills for $160,000. Petitioner attended both meetings in her respective capacities of shareholder and director. The sale was made in December, 1945, and thereafter the corporation did not engage in the manufacture of woolen yarn. Guerin testified that at the time of the sale he intended to retire, and accordingly dissolution of the corporation "was in the cards, that was supposed to be done." He also testified that he had informed petitioner of this decision.

At a special meeting of the board of directors on January 28, 1946, attended by all the directors including petitioner, it was voted to sell the stock of Guerin Fabrics, Inc., a wholly owned subsidiary. That stock was subsequently sold during 1946.

At the close of 1945, after the sale of the machinery and equipment, the balance sheet of River Mills showed total assets of $410,381.11. Of this $28,711.75 represented inventories, the balance was cash, investments, receivables and prepaid rent and insurance.

In December 1945, a few days after the fixed assets of River Mills had been sold, petitioner's husband withdrew $100,000 from the corporation, deposited

it in his personal account and then drew a personal check for that sum which he loaned to Maurice O. Guerin, his son by a prior marriage. Petitioner, describing this transaction as being "just one book to the other," seemed to indicate that this was not an unusual practice on the part of her husband. Afraid that she was going to lose the money she had invested in the stock of the corporation due to this withdrawal, petitioner for about a month and a half thereafter kept insisting that her husband pay her for her stock. He urged her to wait until the corporation was dissolved.

On February 1, 1946, petitioner's husband deposited in his personal checking account at the Union Trust Company, Woonsocket, Rhode Island (carried in the name of "Theophile Guerin, Aurore B. Benoit, Attorney" and hereinafter called the "Guerin" account), a check of River Mills in the amount of $75,000. Prior to this deposit the balance in the Guerin account amounted to $36,892.55. The $75,000 withdrawal was charged on the books of River Mills to Notes Receivable from Theophile Guerin. On the same day, February 1, 1946, after petitioner had endorsed over to her husband the 374 shares of preferred stock and 16 shares of common stock owned by her, he paid her for said stock by a check of that date, drawn on the Guerin account in the amount of $53,611.68. This amount was equal to the par value of her preferred stock, arrears in dividends thereon, and the book value of her common stock.

Petitioner, as a stockholder and director of the corporation, signed two separate waivers of notices of special meetings of stockholders and directors to be held December 12, 1946.

The minutes of the special meeting of stockholders held December 12, 1946, stated, inter alia, that all of the stockholders were present in person; that the minutes were kept by A. B. Benoit, Secretary; that it was voted to liquidate and dissolve the corporation, and that the Treasurer, A. B. Benoit, was authorized to admit the allegations contained in the petition for dissolution and join in the prayer thereof.

On the same day the Board of Directors, at a special meeting, affirmed the action of the stockholders. The minutes of this meeting stated, in part, that all of the directors were present in person, and that the minutes were kept by A. B. Benoit, Secretary.

On December 13, 1946, Theophile Guerin, as authorized by the stockholders' meeting the previous day, filed a petition for dissolution of the corporation in Superior Court of Rhode Island. The petition alleged, among other things, that all of the debts, including federal taxes of the corporation, had been paid and that all of the remaining assets of the corporation had been distributed to the shareholders of record.

On the same day River Mills filed its answer to the petition for dissolution. The answer, admitting all the allegations and joining in the prayer of the petition, was signed by A. B. Benoit, petitioner here, as treasurer of the corporation. On December 18, 1946, the Superior Court entered its decree dissolving River Mills.

The Tax Court found that there was no record in the files of the Commissioner of Internal Revenue of the receipt of a notice of the adoption of a resolution or plan for the dissolution or liquidation of River Mills as required by Int.Rev.Code of 1939, § 148(d), 53 Stat. 65, 26 U.S. C.A. § 148(d).

The income and excess profits tax returns of River Mills for the calendar years 1944 and 1945 were filed on March 15, 1945 and March 15, 1946, respectively. From time to time Theophile Guerin and petitioner, purporting to act for the corporation, executed agreements with the Commissioner of Internal Revenue extending the time within which the Commissioner might assess against the corporation income and excess profits taxes for the years 1944 and 1945. All these agreements bore the seal of River Mills and in no way indicated that it had been dissolved. The dates of execution of the

agreements, the time to which the period for assessment extended, the person signing, and the capacity in which he or she purported to sign, were as follows:

TAXABLE YEAR 1944

| Executed | Time for Assessment Extended to | Signed By | Position |
|---|---|---|---|
| January 2, 1948 | June 30, 1949 | Theophile Guerin | President |
| January 3, 1949 | June 30, 1950 | Theophile Guerin | President |
| March 9, 1950 | June 30, 1951 | Aurore B. Benoit | Treasurer |
| March 28, 1951 | June 30, 1952 | Aurore B. Benoit | Treasurer |

TAXABLE YEAR 1945

| | | | |
|---|---|---|---|
| January 3, 1949 | June 30, 1950 | Theophile Guerin | President |
| March 9, 1950 | June 30, 1951 | Aurore B. Benoit | Treasurer |
| March 28, 1951 | June 30, 1952 | Aurore B. Benoit | Treasurer |

On December 18, 1949, three years after the dissolution decree, the corporate existence of River Mills ceased for all purposes, except that no "action, suit or proceeding begun" before the termination of the three year period could abate.[1]

A statutory notice of deficiency, determining deficiencies in income and excess profits tax against the corporation for the years 1944 and 1945, was sent to River Mills on August 14, 1951. On January 11, 1952, deficiencies and interest thereon to that date, totalling $150,466.08, were assessed against the corporation. The Tax Court concluded that these deficiencies had not been paid.

Petitioner reported in her 1946 income tax return the receipt of $53,611.68 from the disposition of her River Mills stock. Her husband reported in his 1946 income tax return the receipt of $355,950.45 from the disposition of his River Mills stock. In his 1947 return, he did not report any receipts from the disposition of River Mills stock.

On December 31, 1946, there were two checking accounts in the name of River Mills in a Fall River, Massachusetts bank. The credit balance in one of these accounts on that date amounted to $13,-229.67, and in the other $82,903.90. The amount in the first account was withdrawn by checks issued prior to June 11, 1947, and the amount in the second account was withdrawn by checks issued prior to February 4, 1950. The petitioner and her husband were the only persons authorized to make withdrawals from these accounts.

On June 29, 1953, the Commissioner sent to the petitioner a notice of liability for $53,611.68 plus statutory interest in respect of the deficiencies of River Mills determined to be due from petitioner as transferee of River Mills.

The Tax Court in 25 T.C. 656 held that the payment to petitioner was in substance a distribution in liquidation, that it was one of a series of distributions which ultimately rendered the taxpayer

1. R.I.Gen.Laws 1938, c. 116, § 63:
   "Every corporation whose corporate existence expires by any limitation or is terminated by dissolution or otherwise shall nevertheless be continued as a body corporate for 3 years after the date of such expiration or termination for the purpose of prosecuting and defending actions, suits or proceedings by or against it, and of enabling it to settle and close its affairs, to dispose of its property and to distribute its assets, but not for the purpose of continuing the business for which it was established: *Provided, however*, that no action, suit or proceeding begun by or against any such corporation before the expiration of said 3 years shall abate because of the termination of said period."

corporation insolvent, and that petitioner was therefore liable as transferee for the corporate taxes to the extent of the cash she received. The court also held that the waivers signed by the petitioner and her husband effectively extended the period of limitations, and that she was estopped to contend that the life of the corporation expired under state law prior to assessment of deficiencies against it.

On April 4, 1956 petitioner filed a petition for a review by this court of the Tax Court decision.

The controlling statute, Int.Rev.Code of 1939, § 311, 53 Stat. 90, 26 U.S.C.A. § 311, provides in general that certain liabilities may be assessed and collected in the same manner as a deficiency tax. This procedure, first appearing in Revenue Act of 1926, § 280, 44 Stat. 9, added a new remedy for the enforcement of the pre-existing obligation of stockholders of a dissolved corporation to discharge unpaid corporate taxes, which previously could be enforced only by bill in equity or suit at law. Phillips v. Commissioner, 1931, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289.

Particularly pertinent to this case is § 311(a) (1) which provides:

"*Transferees.* The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter."

█ The contention mainly urged by petitioner is that the evidence does not support the finding and conclusion of the Tax Court that the selling price received by petitioner for her stock was one of a series of distributions in complete liquidation of the corporation which rendered it insolvent. Initially it must be noted that when there is substantial evidence to support the conclusions of the Tax Court they must be accepted. Helvering v. Kehoe, 1940, 309 U.S. 277, 60 S.Ct. 549, 84 L.Ed. 751. Substantial evidence has been held to mean such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion. Lawton v. Commissioner of Internal Revenue, 6 Cir., 1947, 164 F.2d 380.

Int.Rev.Code of 1939, § 1119(a), 53 Stat. 162, 26 U.S.C.A. § 1119(a), provides:

"(a) *Burden of proof.* In proceedings before the Tax Court the burden of proof shall be upon the Commissioner to show that a petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax."

█ In the instant case we believe that it was incumbent upon the Commissioner to prove (1) that there was a transfer of corporate assets to the petitioner, (2) that the corporation was insolvent at the time of the transfer, or that the transfer was one of a series of distributions in complete liquidation which left it insolvent and without means to pay its tax liability, (3) the value of the assets so transferred, (4) that he has proceeded against the transferor or that effort to collect would be a senseless gesture. See Mertens, Federal Income Taxation, § 53.45 (1943). The last element was found correctly in respondent's favor by the Tax Court and since petitioner does not contest this finding a discussion thereof is unnecessary.

█ We believe that the respondent presented substantial evidence upon which the Tax Court could find in his favor that there was a transfer of some corporate assets to petitioner.

The evidence discloses that in December 1945, when the fixed assets of the corporation were sold, petitioner's husband withdrew $100,000 from the corporation and made a loan of this amount to his son; that petitioner was apprehensive that she might lose her investment in the corporation; that for about a month and a half she demanded of her husband that she be paid for her stock. In addition it was established that on February 1, 1956, petitioner's husband withdrew $75,000 from the corporation which he deposited in his personal ac-

count, and on the same day he gave her a check on that account for $53,611.68, whereupon she endorsed her stock over.

Without undertaking the detailed consideration that the Tax Court gave this issue, it is clear that the total circumstances dictate the conclusion petitioner intended to rescue the corporate assets owned by her and in substance received some of these assets, notwithstanding the fact that the transaction as between the corporation and her husband took the form of a loan, and as between petitioner and her husband took the form of a sale.

That petitioner's husband was merely a conduit through which some corporate funds passed on their way to her cannot be disputed in view of proof that he had in the past treated corporate assets as his own in making a $100,000 loan to his son without resort to corporate authorization of any kind. Furthermore, that such utilization of corporate assets by her husband was general practice was implicitly asserted by petitioner when she described the transaction between Guerin and his son as "just from one book to the other." This factual setting reveals that Guerin could utilize corporate funds as he saw fit.

Although on appeal petitioner asserts that the transaction between Guerin and petitioner originated in a bona fide loan from the corporation, she failed to produce evidence to that effect in the Tax Court proceeding. Her reliance on an allegation in the petition for dissolution, which states "that all of the outstanding bills and obligations" of the corporation had been settled, as proving that the $75,000 loan was repaid by Guerin is without merit since the petition in substance was merely another independent act of Guerin. Even if the above language were to be taken at face value it fails to purport the meaning which petitioner ascribes to it.

■ It was petitioner's duty to rebut respondent's prima facie case on the issue of receipt of corporate assets (See Gobins, 1952, 18 T.C. 1159, affirmed per curiam, 9 Cir., 1954, 217 F.2d 952; Com-missioner of Internal Revenue v. Renyx, 2 Cir., 1933, 66 F.2d 260; 9 Mertens, Federal Income Taxation, § 53.44 (1943)) by showing generally that the corporation was not Guerin's alter ego or specifically that the loan in this case was repaid to the corporation by Guerin. This she did not do.

■ A second element of transferee liability that had to be established was that the transfer rendered the corporation insolvent or that it was one of a series of distributions in complete liquidation which left the corporation insolvent and without means to pay its tax liability. Cf. Borall Corporation v. Commissioner of Internal Rev., 2 Cir., 1948, 167 F.2d 865. We are of the opinion that the Commissioner presented substantial evidence upon which the Tax Court could find in his favor on this issue.

■ The instant case differs from any of the cases cited by petitioner. Here there was a decision by Guerin, president and principal stockholder, to retire and wind up the business. The Tax Court found that petitioner knew of this decision, and took part in the corporate meeting of December 1945, that culminated in the sale of the fixed assets. The business in which the corporation had theretofore engaged was discontinued. All this occurred before petitioner received $53,611.68 for her stock interest. Without elaboration on further details, found in the Tax Court opinion, we are satisfied the Tax Court could reasonably conclude that the normal and necessary result of these affirmative actions was the winding up of the corporate business. Since it was in the process of liquidation any distributions then or thereafter made to its stockholders were liquidating in character even though no resolution of liquidation or dissolution had been adopted by them. Cf. Kennemer v. Commissioner of Internal Revenue, 5 Cir., 1938, 96 F. 2d 177; Holmby Corporation v. Commissioner of Int. Rev., 9 Cir., 1936, 83 F.2d 548.

■ However, the petitioner urges that the distribution to her did not render

River Mills insolvent. While it is true that the distribution did not render the corporation insolvent at the time it was made, she, nevertheless, is liable as a transferee if that distribution was one of a series of distributions in liquidation which resulted in ultimate insolvency. Cf. Borall Corporation v. Commissioner of Int. Rev., supra; Botz v. Helvering, 8 Cir., 1943, 134 F.2d 538. The respondent effectively established that the distribution to her fell into this category. The corporate assets available for distribution in 1946 were approximately $395,845.58. Petitioner, in her 1946 income tax return, reported the receipt of $53,611.68 and her husband, in his 1946 return, reported the receipt of $355,950.45 from the disposition of River Mills stock. In his 1947 return he did not report any receipts from that source. In the petition for dissolution filed by petitioner's husband on December 13, 1946, he stated under oath that all of the assets had been distributed to the stockholders—which allegation was admitted in the answer of the petitioner signed by her as treasurer of the corporation.

On the above facts the Tax Court correctly found that all of the assets of the corporation were distributed to its stockholders during 1946 notwithstanding the fact that two bank accounts remained under the corporate name for some time after 1946. Whether her husband had appropriated to himself the bank accounts as of December 1946, or whether they remained corporate assets until they were withdrawn is not of significance since petitioner's liability as a transferee depended on the situation existing at the time of the completion of the series of distributions in complete liquidation of the corporation. If the accounts remained corporate assets until withdrawn, as petitioner contends, the completion of the series of distributions in complete liquidation occurred at the very latest when the balances were finally withdrawn.

■ A third element of transferee liability that respondent was under a duty to establish was the value of the assets received by petitioner as transferee. For it is clear that one who receives corporate assets upon dissolution of a corporation is severally liable to creditors of the corporation only to the extent of the assets received. Phillips v. Commissioner, supra.

The balance in the Guerin account on February 1, 1946 was $36,892.55. On that day he withdrew $75,000 from the corporate account and deposited that sum in his personal account, making a total balance of $111,892.55. From this balance he then paid out $53,611.68 to petitioner for her stock interest.

■ The respondent did not present any evidence to show that the payment to petitioner came entirely from Guerin's $75,000 withdrawal from the corporation. The Tax Court, without expressly discussing this issue, assumed no portion of Guerin's original balance of $36,892.55 was used in the payment to petitioner even though the amount withdrawn from the corporate account by Guerin bore no relation to the sum paid petitioner. We think that respondent's burden on the facts of this case required proof as to the actual value of the corporate assets received by petitioner, and it was not sufficient for him merely to show that the petitioner received assets of some value. See 9 Mertens, Federal Income Taxation, § 53.39 (1943), and cases cited. In the absence of such proof the "ultimate finding" of the Tax Court that the transaction between Guerin and petitioner was *wholly* one of distribution in liquidation, as evidenced by the $53,611.68 tax liability imposed on petitioner, was without foundation and therefore erroneous.

The problem of identification of commingled funds is not unique. It has arisen with particular frequency in connection with the estate tax deduction for property previously taxed in the estate of a prior decedent. In identifying the sources of particular funds in the determination of estate taxes, various degrees and types of evidence have been received in order to establish the identity of the funds remaining in the account, including evidence as to the intention of the dece-

dent in making withdrawals. E. g. Rodenbough v. United States, 3 Cir., 1928, 25 F.2d 13; Estate of Miller, 1944, 3 T.C. 1180.

■ Likewise, here the Tax Court should have required some evidence as to identity of the funds used by Guerin in the payment made to petitioner. It should not have assumed, in view of respondent's burden of proof, that the entire $53,611.68 was derived from the withdrawal made by Guerin from the corporation. In the absence of evidence it must be assumed in petitioner's favor that Guerin used his existing balance of $36,892.55 pro tanto in making payment to the petitioner. Accordingly, no more than $16,719.13 could be attributed to assets transferred from the corporation. So we conclude that on the evidence presented the substance of the transaction whereby petitioner received cash for her stock was only *in part* a distribution in liquidation.

■ The petitioner contends finally that her liability as transferee is barred by the statute of limitations, Int.Rev. Code of 1939, §§ 275, 311, 53 Stat. 86, 90, 26 U.S.C.A. §§ 275, 311, since the waivers she executed after December 18, 1949, Int.Rev.Code of 1939, § 276, 53 Stat. 87, 26 U.S.C.A. § 276, as treasurer of River Mills, extending the statutory period for assessment for each of the taxable years to June 30, 1951 and June 30, 1952, were ineffective and invalid because the decree dissolving River Mills was entered on December 18, 1946, and under the Rhode Island law its corporate existence ceased for all purposes on December 18, 1949. She urges, therefore, that inasmuch as waivers executed prior to the latter date extended the statutory period for assessment as to both 1944 and 1945 only to June 30, 1950, the assessment made against River Mills on January 11, 1952, and the notice of transferee liability mailed to her on June 29, 1953, were untimely.

This contention is clearly without merit. Since the required return, Int.Rev. Code of 1939, § 148(d), 53 Stat. 65, setting forth the terms of the resolution of dissolution and liquidation of the corporation was not filed when River Mills was dissolved, and since petitioner, after the three-year period following the dissolution of River Mills but before June 30, 1950, executed consents under the corporate seal of River Mills and as treasurer thereof without indicating that the corporation had dissolved, extending the period for assessment and collection to June 30, 1952, the Commissioner was entitled to rely on the validity of the consents and petitioner is estopped to deny validity of same. Cases in point and in support of our view are Lucas v. Hunt, 5 Cir., 1930, 45 F.2d 781 and Lloyd, 1933, 29 B.T.A. 74. See also Stearns Co. of Boston, Mass. v. United States, 1934, 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647.

The decision of the Tax Court is vacated and the case is remanded to that Court with direction to enter a modified decision for the respondent in conformity with this opinion.

WOODBURY, Circuit Judge (dissenting).

The fundamental question in this case is whether the taxpayer received the corporation's money or her husband's money in payment for her stock. If the money were the corporation's, she is liable as a transferee; if the money were her husband's, she is not. There are, I concede, indications pointing both ways on this issue. But as I read the evidence outlined in the opinion of the court, taking into account also the fact that she was paid book value for her stock and not its value in liquidation, I do not see how it can be said that the Commissioner has sustained his burden of showing by a balance of the probabilities that the money she received for her stock was the corporation's, and that her husband was but the means by which it was transferred from it to her. In short, on my analysis of the evidence I am prepared to say that the Tax Court clearly erred in concluding that the Commissioner had sustained his

statutory burden of proof. I would reverse outright and therefore see no reason to discuss what I consider certain difficulties standing in the way of the result reached by my associates.