*Decisions will be entered under Rule 50.*

JEANNE HAMAR, SUCCESSOR TRUSTEE UNDER THE WILL OF LOTTIE HAMAR, DECEASED, TRANSFEREE, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2088–62, 3726–62, 3727–62. Filed August 11, 1964.

*Harry Friedman*, for the petitioners.
*Joseph P. Crowe*, for the respondent.

PIERCE, *Judge:* The respondent determined the following transferee liabilities, in respect of an unpaid deficiency in estate tax, addition to tax for fraud, and interest, which this Court in a prior case determined to be due from the estate of Lottie Hamar, deceased:

| Docket No. | Transferee-petitioner | Nature of liability |
| --- | --- | --- |
| 2088–62 | Jeanne Hamar, successor trustee under will of said decedent. | Liability as transferee in the limited amount of $50,000 plus interest, arising from transfer to the testamentary trust of assets of the decedent's estate. |
| 3726–62 | Myron Hamar, alleged transferee. | Liability as transferee in the amount of $55,708.71 plus interest, arising from transfers of assets both from the decedent during her lifetime and also from her estate at or after her death. |
| 3727–62 | Jeanne Hamar, fiduciary. | Personal liability as a fiduciary under sec. 3467 of the Revised Statutes, as amended (31 U.S.C. 192), in the limited amount of $50,000 plus interest, arising from making nonpriority payments and distributions before satisfying and paying debts due the United States. |

[1] Proceedings of the following petitioners are consolidated herewith: Myron Hamar, alleged transferee, docket No. 3726–62; Jeanne Hamar, fiduciary, docket No. 3727–62.

All of said cases were consolidated for trial.

Regarding the case bearing docket No. 3727–62, respondent has conceded on brief that, due to his failure to prove actual or constructive notice to the fiduciary as to the Government's tax claims against the decedent's estate, the personal liability of said fiduciary has not been established. Accordingly, said case is here decided in favor of the petitioner.

The remaining issues to be decided are:

■ In docket No. 2088–62, whether Jeanne Hamar as successor trustee of the trust created under the will of Lottie Hamar, deceased, is liable as a transferee of assets of the estate of said decedent.

■ In docket No. 3726–62, whether the liability of Myron Hamar as a transferee of assets of the estate of Lottie Hamar, deceased (which he has conceded on brief resulted from transfer to him of estate assets), was thereafter extinguished by his discharge in bankruptcy.

#### FINDINGS OF FACT

All of the facts have been stipulated; and they are so found. The stipulation of facts and all exhibits identified therein are incorporated herein by reference. Those facts which are relevant to the two remaining issues to be decided, may be summarized as follows:

Lottie Hamar (herein called the decedent) died testate on April 15, 1953, a resident of Cleveland, Cuyahoga County, Ohio. Her husband had predeceased her in 1950. Her will was admitted to probate on April 16, 1953, by the Probate Court of Cuyahoga County; and on the same date Myron Hamar, who was the decedent's son and only child, was duly appointed by said court as the executor. Myron thereupon accepted said appointment, qualified, and took possession and control of all the estate assets as executor. On May 5, 1953, he filed with said Probate Court an Inventory and Appraisal which was approved by the court on May 19, 1953; and he therein set forth the assets belonging to the estate at the total appraised value of $210,668.84, consisting of cash in a bank savings account of $4,639.84, and various corporate stocks valued at $206,029. As shown in the Federal estate tax return hereinafter mentioned, most of the securities originally included in the estate were liquidated by sale during the first 2 or 3 months after the estate was opened.

The will of the decedent provided as far as here relevant, as follows:

##### ITEM I.

I direct my Executor to pay out of my estate all of my just debts including the expenses of my last illness and funeral expenses.

##### ITEM II.

My Executor may pay out of my estate, and to such person or persons as he may deem proper, such sum or sums of money, if any, as he shall, in his discretion, determine to be reasonable for the purpose of providing perpetual care for my grave and the grave of my beloved husband, Nathan Hamar.

### ITEM III.

I give and bequeath the sum of Three Thousand Dollars ($3,000.00) to my brother, Samuel Berman; to my brother, Harry Berman, the sum of Two Thousand Dollars ($2,000.00) ; to my nephew, Kenneth M. Berman, the sum of One Thousand Dollars ($1,000.00).

   *      *      *      *      *      *      *

### ITEM IV.

I give and bequeath to the Trustee hereinafter named, and to his Successor in Trust, the sum of Fifty Thousand Dollars ($50,000.00) for the benefit of my beloved son, Myron Hamar, who shall receive said trust property as hereinafter provided. Said sum shall be set apart by my Executor either in cash or in securities at their fair value, as determined by my Executor and any such determination so made in good faith shall be binding on all concerned. Such assets shall be turned over to said Trustee as promptly as practicable after my death, and the income thereon shall be deemed to accrue to said Trust Estate from and after the date of my death.

Said Trustee is hereby authorized and directed to pay said sum, together with all accruals thereon, to my beloved son, Myron Hamar, upon him reaching his fortieth birthday, and said trust upon proper receipt thereof by my Trustee shall terminate. All expenses in connection with said trust estate shall be first paid by said Trustee before payment to the said Myron Hamar.

### ITEM V.

The rest, residue and balance of my estate of whatsoever nature and description which I now own or may hereafter acquire, I give, bequeath and devise to my beloved son, Myron Hamar, if living; otherwise to the issue of his body.

   *      *      *      *      *      *      *

### ITEM VII.

I hereby nominate, constitute and appoint Myron Hamar as my Executor and Philip Lustig as Testamentary Trustee and Trustee of this, my Last Will and Testament, granting to them such authority and powers as Executor and Trustee to enable them to carry out their duties and responsibilities with promptness and dispatch, * * *

The date on which Myron would attain the age of 40 years, and on which the trustee was authorized and directed (under Item IV of the will) to distribute the trust assets to him, was October 30, 1962.

On November 23, 1953, Philip Lustig filed an application for appointment as testamentary trustee of the trust mentioned in Item IV of the decedent's will. In this application he listed specifically by certificate numbers certain corporate stocks and bonds, and also specifically by check number, name of payor and amount, certain bank checks—all estimated to have a probable aggregate value of $50,000— which he stated were "contained in said trust." Most of the securities and checks so listed in said application were not included in the above-mentioned executor's inventory as being assets owned by the decedent at the time of her death, and they also were not listed in the estate tax return hereinafter mentioned, as assets owned by the decedent. The Probate Court approved this application on the same date that it was

filed; and thereupon Lustig was duly appointed as the sole trustee of said trust. Subsequently on July 16, 1954, Lustig as trustee filed with the Probate Court, an inventory of the assets comprising the trust estate in which he acknowledged that he held in his possession as the trust fund, certain corporate stocks and bonds valued at $35,750 and cash in a bank savings account in the amount of $23,254.75, or a total of $59,004.75.

Meanwhile on July 15, 1954, Myron, as executor of the decedent's estate, had filed a Federal estate tax return for said estate with the district director of internal revenue at Cleveland, Ohio. In this return, in which Lustig was shown to be the attorney for the estate, there was reported the following:

#### GROSS ESTATE

| | | |
|---|---|---|
| Securities (most of which had been sold within a few months after the opening of the probate estate)—valued at date of death | $209, 322. 75 | |
| Cash (savings account at Cleveland Trust Co.) | 4, 639. 84 | |
| Total gross estate | | $213, 962. 59 |

#### DEDUCTIONS

| | | |
|---|---|---|
| Funeral and administrative expenses | $12, 395. 40 | |
| Debts of decedent | 1, 386. 16 | |
| | | 13, 781. 56 |
| Federal estate tax (paid on July 15, 1954) | | 31, 549. 97 |

Subsequently on March 29, 1955, Myron filed his final executor's account with the Probate Court. The copy of this account as received in evidence herein, reads so far as here material as follows:

| | Amount received | Amount paid out |
|---|---|---|
| Received from sale of common stocks, order of court | [1] $206, 029. 00 | |
| Cash—Cleveland Trust Co | 4, 639. 84 | |
| | 210, 668. 84 | |
| Expenditures | | $53, 310. 58 |
| [Included under this heading is a list of payments of various court costs and administrative expenses; Federal estate tax; State inheritance tax; various debts and funeral expenses of the decedent; and also what appears to be distributions made to 3 of the | | |

[1] There is no explanation in the record regarding what appears to be an inconsistency between the above-mentioned executor's account and the above-mentioned inventory filed by Philip Lustig as trustee. The executor's account indicates that Myron, as executor, sold all the common stocks for $206,029; and then paid the expenses and made the distributions to himself and Lustig in cash, out of the proceeds of such sales. Lustig's inventory, on the other hand, appears to indicate that he, as trustee, received the trust funds from the executor in the form of various securities and checks.

|  | Amount received | Amount paid out |
|---|---|---|
| legatees mentioned in the decedent's will, after reduction for inheritance taxes, as follows: |  |  |
| Samuel Berman_____ | $2,875 |  |
| Harry Berman_____ | 1,925 |  |
| Kenneth Berman_____ | 975 |  |
| All of these payments and distributions indicate that they were evidenced by receipts bearing specified numbers.] |  |  |
| Balance paid to Myron R. Hamar—residuary legatee_____ |  | $107,358.26 |
| [The above figure shows an alteration by pen from the amount of $157,358.26 as originally typed.] |  |  |
| Philip Lustig, trustee_____ |  | 50,000.00 |
| [Inserted by pen.] |  |  |

The evidence does not establish whether the above-mentioned distribution to Myron, as residuary legatee, was received by him prior, concurrently, or subsequent to the distribution of the legacy to Lustig as trustee.

Payment of the above-mentioned expenditures and distributions to legatees completely exhausted all assets of the decedent's estate. Each of the last-mentioned distributions to the legatees (Lustig as trustee, and Myron Hamar as residuary legatee) was made without any consideration. Each was paid without any provision being made for satisfaction of any possible deficiency in the estate tax reported in the estate tax return, of any interest thereon, or of any possible addition to tax.

On March 8, 1956 (following the filing and approval of the executor's final account), Jeanne Hamar, who was the wife of Myron, filed an application with the Probate Court for appointment as successor trustee of the trust created under the will of Lottie Hamar, deceased (being the trust of which Lustig was then the trustee); and on this same date, said court appointed her as such successor trustee, subject to her giving a surety bond. About 2 weeks later on March 26, 1956, Lustig filed with the Probate Court his final trustee's account in which he listed trust assets valued at $60,068.87; and Jeanne on the same date received from him, and delivered her written receipt for, all these same trust assets. Thereafter on April 11, 1956, Jeanne appeared before the Probate Court and accepted the said appointment as successor trustee; and the court then approved her bond and ordered that letters of successor trusteeship be issued to her.

Subsequently on May 29, 1957, the Commissioner of Internal Revenue issued a statutory notice of deficiency to Myron as executor of the estate of Lottie Hamar, deceased; and he therein determined that there was owing from the estate a deficiency in estate tax and

also an addition to tax for fraud. Myron, as executor, filed a petition with this Court with respect to said determination; and thereafter on May 27, 1960, this Court filed its Memorandum Findings of Fact and Opinion (*Estate of Lottie Hamar*, docket No. 69575, T.C. Memo. 1960–107). Also on September 19, 1960, this Court entered its decision in said case, wherein it ordered and decided that there was a deficiency in estate tax due from the estate of Lottie Hamar in the amount of $26,622.48, and also an addition to tax for fraud under section 3612(d)(2) of the 1939 Code in the amount of $29,086.23. No appeal from this decision was filed, and accordingly said decision became final.

Following the filing of the above-mentioned Memorandum Opinion and decision of this Court, the Commissioner on January 20, 1961, assessed against the estate of Lottie Hamar, deceased, the amounts of the deficiency in estate tax and the addition to tax which this Court had determined, together with interest thereon to the date of said assessment. The Commissioner thereafter filed notices of liens for such tax liabilities, and also made diligent efforts to collect the same (as shown in the stipulation of facts filed herein), but these efforts produced collections totaling only $626.35.

On March 23, 1962, the Commissioner issued to Jeanne Hamar as successor trustee, the above-mentioned notice of transferee liability which is here involved. On August 6, 1962, he issued to Myron Hamar as alleged transferee, the other notice of transferee liability here involved; and also on said latter date he issued to Jeanne Hamar as fiduciary, the notice of personal liability above mentioned.

On September 30, 1960, Myron filed a petition in bankruptcy with the United States District Court for the Southern District of New York (docket No. 60–B–577). He was thereupon adjudged a bankrupt by that court on the same date; and on April 10, 1961, he was granted a discharge in bankruptcy, which provided, in material part, that he—

be, and he hereby is, discharged from all debts and claims which, by the Act of Congress relating to Bankruptcy, are made provable against his estate, except such debts as are, by said Act, excepted from the operation of a discharge in bankruptcy.

OPINION

*I*

In the two remaining consolidated cases to be here decided (docket Nos. 2088–62 and 3726–62), the Commissioner has invoked the summary procedures provided by section 900 (a) and (e) of the 1939 Code and the cognate provisions of section 6901 (a) and (h) of the

1954 Code,[2] for enforcing transferee liabilities against legatee-distributees of a decedent's estate, in respect of unpaid estate tax liabilities of the estate. The liabilities which may be enforced under such summary procedures provided by the Federal statutes, are those which have arisen and exist under the laws of the particular State involved (*Commissioner* v. *Stern*, 357 U.S. 39); and in the instant case, since the decedent died a resident of Ohio and her estate was there administered, such liabilities are those which arose and existed under the material provisions of the Ohio Revised Code which are set forth in the margin.[3] It will be observed that under these Ohio

---

[2] I.R.C. 1939:
SEC. 900. TRANSFERRED ASSETS.
(a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this subchapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds):
  (1) TRANSFEREES.—The liability, at law or in equity, of a transferee of property of a *decedent*, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed by this subchapter.
  *    *    *    *    *    *    *
  (e) DEFINITION OF "TRANSFEREE".—As used in this section, the term "transferee" includes heir, legatee, devisee, and distributee, and includes a person who, under section 827(b), is personally liable for any part of the tax.
I.R.C. 1954:
SEC. 6901 (a) and (h). [The material provisions hereof are *substantially the same as* the above-quoted provisions of the 1939 Code.]
[3] Ohio Rev. Code:
  SEC. 2113.53. Payment of legacies and distributions. [This section, in general, provides for the payment of legacies and distributions, after all debts and obligations which are entitled to priority in payment have been paid or provided for; and it further provides that each legatee or distributee is liable to make restitution for the amounts distributed to him if this becomes necessary in the administration of the estate.]
  SEC. 2117.25. Order in which debts to be paid.
  Every executor or administrator shall proceed with diligence to pay the debts of the deceased and shall apply the assets in the following order:
  (A) Costs and expenses of administration;
  (B) Bill of funeral director not exceeding three hundred fifty dollars and such funeral expenses other than the bill of the funeral director as are approved by the probate court;
  (C) The allowance made to the widow and children for their support for twelve months;
  (D) Debts entitled to a preference under the laws of the United States;
  (E), (F), (G), (H), and (I) [These paragraphs describe miscellaneous other debts of less priority.]
  *    *    *    *    *    *    *
  No payments shall be made to creditors of one class until all those of the preceding class are fully paid or provided for. * * *
  SEC. 2117.38. Assets from which payment to be made.
  If an executor or administrator has made a partial distribution of the assets of the estate at the time a [contingent] claim is presented * * *, and if the claim is allowed or after rejection is found to be due from the estate, but the assets remaining in the possession of the executor or administrator are insufficient to pay the claim in full, the assets remaining shall first be exhausted before proceeding to recover against the distributees * * * [and thereafter] the creditor may bring an action thereon to recover from the distributees of the decedent's estate as provided in sections 2117.41 and 2117.42, * * *.
  SEC. 2117.41. Payment of contingent claims after settlement of estate.
  A claimant whose cause of action accrues * * * [at or after the death of the decedent] *may bring suit to recover thereon against the heirs, next of kin, surviving spouse as next of kin, devisees, and legatees under the decedent's will, each of whom shall be liable* to the claimant in an amount not exceeding the value of the real and personal estate that he received under the will or on distribution of the estate. * * * [Emphasis supplied.]

statutes, legatees and other distributees of a decedent's estate become *severally* liable as transferees, for the estate's obligations to creditors (which would include obligations to the United States for taxes) in situations where the estate itself is unable to satisfy such preferred obligations by reason of distributions from the estate assets having been paid to such legatees or other distributees before payment of debts and obligations which were entitled to priority in the disposition of the estate assets.

## II

In the case of Jeanne Hamar as successor trustee (docket No. 2088-62), said petitioner contends that she is not liable as a transferee under the above-cited statutes, for three reasons: (1) That the estate was neither insolvent nor rendered insolvent at the time when the legacy to the testamentary trust was paid to Lustig whom she succeeded in office, and that the estate did not become insolvent until the residue thereof was later distributed to Myron as residuary legatee; (2) that the estate tax liabilities here involved were neither asserted nor determined against the decedent's estate until after the legacy to the trust had been paid; and (3) that since the estate had a right to obtain reimbursement from Myron for the amount distributed to him, this right to reimbursement was a valuable asset which prevented the estate from being insolvent, and which also prevented any transferee liability arising against her as the successor trustee of the testamentary trust.

In our opinion, all of these contentions of said petitioner are without merit for the following reasons.

1. As to the first of said contentions, there are two complete answers. First, as we have hereinbefore found as a fact, the evidence does not establish whether the distribution to Myron as residuary legatee was paid to him, prior, concurrently, or subsequent to the distribution of the legacy to Lustig as trustee; for the date of the payment to Myron has not been established, and such date cannot be inferred either from the fact that Myron was designated as "residuary legatee," or from the fact that his final executor's account was filed with the Probate Court subsequent to the date on which Lustig filed his trustee's inventory. Rather, Myron's final account as executor, which we have set forth in our Findings of Fact, tends to indicate that he first liquidated the estate into cash in the total amount of $210,668.84, by selling the securities which the decedent had held at the time of her death; that he then paid the amounts of relatively small administration expenses, debts, and three small legacies—all totaling $53,310.58; and that he thereafter distributed the "Balance" of said cash assets of the estate in payment of the legacies to himself as residuary legatee and to

Lustig as trustee. Thus the evidence does not support the factual premise of the present petitioner that the payment of the legacy to the testamentary trust actually preceded the payment of the legacy to Myron.

Second, assuming that the payment of the legacy to the trust actually did precede the payment of the legacy to Myron, nevertheless the Ohio statutes which we have set forth in footnote 3, *supra*, make it clear that in any situation where distributions to legatees have been paid prior to satisfaction of the estate's obligations and debts (contingent or otherwise) which were entitled to priority in payment, then *each* of the legatees who received such a distribution is *severally* liable as a transferee. It should be borne in mind that here we are not dealing with the familiar situation of fraudulent conveyances made by a living person or a going business entity, whose assets were gradually dissipated by separate gifts or transfers without consideration, to the point of insolvency; but rather we are here dealing with the estate of a decedent as a whole, as to which the administration and distribution thereof must be made in accordance with the decedent's will, and in accordance with the provisions of local law that establish priorities in the order of paying debts and making distributions to beneficiaries, and which also cause each of the legatees to become severally liable as a transferee when these priorities are not given effect.

Such situation is similar to that involving the winding-up and disposition of the assets of a dissolved corporation, wherein the corporate debts must be satisfied before any distributions are made to the stockholders. In such situation, it long has been an established principle that, if the assets of the corporation are distributed among the stockholders before all debts and other obligations entitled to priority are first paid or provided for, *each* stockholder is *severally* liable to the creditors, to the extent of the amount received by him; and also that the Commissioner, in enforcing such transferee liabilities for unpaid taxes of an insolvent corporation, may proceed either against any one of the stockholders alone, or against all stockholders of the same class, as he may choose to do. *Phillips-Jones Corporation* v. *Parmeley*, 302 U.S. 233; and *Phillips* v. *Commissioner*, 283 U.S. 589.

Moreover, it also is well established that where insolvency of a corporation results from a series of related transfers to stockholders which were not all made simultaneously, and some of the transfers may have occurred before the entire series effected actual insolvency, each of the stockholders who participated in said related transfers is nevertheless severally liable as a transferee for the debts of the transferor, to the extent of the distribution which he received. *Borall Corporation* v. *Commissioner*, 167 F. 2d 865 (C.A. 2), affirming a

Memorandum Opinion of this Court; *Botz* v. *Helvering*, 134 F. 2d 538 (C.A. 8), affirming 45 B.T.A. 970; *Aurore B. Benoit*, 25 T.C. 656, 663, remanded on another issue 238 F. 2d 485 (C.A. 1).

2. As regards the second of the above-mentioned contentions of the successor trustee—that she cannot be held liable as a transferee because the estate's tax liabilities here involved were not asserted or determined until after the legacy to the trust had been paid—both this Court and others have held that such circumstance does not prevent a nonpriority distributee (such as the trust) from being liable as a transferee after such tax liabilities have finally been determined. *Helen Dean Wright*, 28 B.T.A. 543; *Marva Trotter Barrow Spaulding*, 27 T.C. 479, 495, affd. 255 F. 2d 759 (C.A. 7); *Coca-Cola Bottling Co. of Tucson, Inc.*, 37 T.C. 1006, affd. 334 F. 2d 875 (C.A. 9) (July 13, 1964); *J. Warren Leach*, 21 T.C. 70, 75; *Scott* v. *Commissioner*, 117 F. 2d 36, 38 (C.A. 8), and cases therein cited.

3. As regards the third above-mentioned contention of the successor trustee, the existence of any right of reimbursement which the decedent's estate may have had against Myron did not preclude the Commissioner from enforcing the transferee liability against the successor trustee, without first attempting to enforce such right of reimbursement. What we said in *Coca-Cola Bottling Co. of Tucson, supra*, is here apposite:

Whatever * * * rights to indemnification * * * [may exist], the Government is not required, in collecting its revenue, either to litigate such rights or to collect from such third person. * * *

To the same effect see *Phillips* v. *Commissioner, supra* at 604; and *John H. Humbert*, 24 B.T.A. 828, 829.

We decide this first issue in favor of the Commissioner.

### III

The remaining issue for decision involves the transferee liability of Myron Hamar (docket No. 3726–62). This liability resulted not only from transfers made to him by the decedent in contemplation of death, which (as decided by this Court in the prior case of *Estate of Lottie Hamar, Deceased, supra*) were includable in the gross assets of the decedent's estate; but it resulted also from the transfer to him of assets of the decedent's estate before payment of the entire estate tax liability of said estate.

Said petitioner, in his pleadings herein, asserted two defenses against said transferee liability that the Commissioner had determined, which were in substance: (1) That he was not a transferee of the decedent's estate; and (2) that, even if he had previously become liable as such transferee, that liability had thereafter been extinguished by his discharge in bankruptcy. Subsequently at the trial herein, petitioner

abandoned the first of these defenses through a concession made by his counsel that, "There is no question that he is a transferee"; and also on brief, said first contention was likewise abandoned, and his defense was limited solely to the other contention that his transferee liability had been extinguished by his discharge in bankruptcy.

Petitioner's principal argument in support of the latter position is in substance, that although "It is fundamental that Federal taxes are not discharged by the bankruptcy," his liability as a transferee for unpaid estate tax of the decedent's estate is not a liability for a "tax levied by the United States" within the meaning of the Bankruptcy Act.[4] We think there is no merit in such position.

1. By way of background, it may be observed that the contention that the liability of a transferee for his transferor's unpaid Federal taxes is not a liability for a "tax," is not a new one. In *Felland* v. *Wilkinson* (W.D. Wis. 1928), 33 F. 2d 961, which is one of the earliest cases involving the constitutionality of the summary procedures for enforcing transferee liabilities for unpaid income taxes of an insolvent corporation (which procedures were first enacted as section 280 of the Revenue Act of 1926), the taxpayer there contended, as one of his grounds for claiming unconstitutionality of such procedures, that the amounts claimed from him were not "in any way a tax due * * * to the United States." The court, in rejecting this argument, said:

It must be borne in mind that while the liability of a transferee may not be a tax liability in the ordinary sense, nevertheless it is a liability for a tax; in other words, the government is seeking to collect what is primarily a tax and continues to be a tax although, because of the inability to collect from the taxpayer proper, it seeks to require his transferee to pay. From the standpoint of the government the money sought in this case is as much an item of revenue as it would be were the proceedings to collect directed toward the * * * [transferor]. * * *

Likewise, in the similar case of *Routzahn* v. *Tyroler*, 36 F. 2d 208 (C.A. 6), certiorari denied 281 U.S. 734, the Court of Appeals said:

It is true that this right of review [by Courts of Appeals of decisions of the Board of Tax Appeals respecting transferee liabilities] is expressly given only to the "taxpayer" * * *; but * * * the term "taxpayer" is not seriously inaccurate when applied to the involuntary payer of the tax debt [i.e., the transferee], and he has before the Board the rights of a taxpayer. * * *

Contentions such as those advanced by the taxpayers in the above cases have largely or entirely disappeared from the judicial scene since 1931, when the Supreme Court in *Phillips* v. *Commissioner, supra*, sustained the constitutionality of the summary procedures for enforc-

---

[4] Bankruptcy Act, 11 U.S.C.:

Sec. 35. Debts not affected by a discharge

(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as (1) are due as a tax levied by the United States, * * *

ing transferee liabilities, and sustained also the jurisdiction of this Court and the Courts of Appeals to review cases arising thereunder.

2. The present petitioner's argument—that his liability as a transferee for payment of the estate tax liability of the decedent's estate, was discharged in bankruptcy because it was not a liability for "a tax levied by the United States"—is akin to the arguments presented by the taxpayers in the last-mentioned cases; and we regard it to be here similarly untenable.

As regards such argument, so far as it relates to the *deficiency* in estate tax, he has cited no authority which even tends to support his position; and we too have found no such authority. But, as regards his liability for *interest* on the deficiency and for the *addition to tax*, he has presented two additional contentions: (1) That his liability for any postbankruptcy interest was discharged in bankruptcy under the doctrine of *New York* v. *Saper*, 336 U.S. 328; and (2) that his liability for the addition to tax was likewise discharged in bankruptcy under the doctrine of *Simonson* v. *Granquist*, 369 U.S. 38, because it was a "penalty" and not a "tax."

We are convinced however, that each of the two last-cited cases is distinguishable, for each involved only a claim which could not be allowed *against the trustee in bankruptcy*, and did not involve the *personal liability of the debtor himself* which was not dischargeable in bankruptcy. This distinction, at least so far as the interest is concerned, is made clear in the more recent case of *Bruning* v. *United States*, 376 U.S. 358, wherein the Supreme Court said:

In *New York* v. *Saper, supra,* this Court held that the general rule [that in liquidation of the bankruptcy estate, a creditor will be allowed interest only to the date of the petition in bankruptcy] applies to claims against the trustee for taxes as well as for other debts. But the instant case concerns the debtor's personal liability for post-petition interest on a debt for taxes which survives bankruptcy to the extent that it is not paid out of the estate. * * *

* * * In *New York* v. *Saper, supra,* the Court found the reasons for the traditional rule applicable and held that post-petition interest on a claim for taxes was not to be allowed against the bankruptcy estate. Here, we find the reasons—and thus the rule—inapplicable, and we hold that post-petition interest on an unpaid tax debt not discharged by § 17 [11 U.S.C. sec. 35] remains, after bankruptcy, a personal liability of the debtor.

We regard the doctrine of this *Bruning* case to be equally applicable not only to the present petitioner's personal liability as a transferee for *interest* on the unpaid deficiency in estate tax owed by the decedent's estate, but also to this personal liability as a transferee for the deficiency itself and the addition to tax.

Moreover, as regards the addition to tax, this (as its name indicates) is an addition to the *estate tax* owed by the decedent's estate, and not a "penalty." As was said by the Supreme Court in *Helvering* v. *Mitchell*, 303 U.S. 391:

The remedial character of [civil] sanctions imposing additions to a tax has been made clear by this Court in passing upon similar legislation. They are provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud.[4] * * *

\* \* \* \* \* \* \*

it is provided that collection of the 50 per centum addition, like that of the primary tax itself, may be made "by distraint" as well as "by a proceeding in court." * * * That Congress provided a distinctly civil procedure for the collection of the additional 50 per centum indicates clearly that it intended a civil, not a criminal, sanction. * * *

* * * Obviously all of these "Additions to the Tax" were intended by Congress as civil incidents of the assessment and collection of the income tax[15] [the particular tax there involved]. [Footnotes omitted.]

Also, in said footnote 15 to the above quotation, the Court pointed out that a "somewhat similar additional tax" is imposed in the case of corporations formed or availed of for the purpose of avoiding surtax on their shareholders through improper accumulation of surplus. (See sec. 102, 1939 Code.)

Furthermore, in each of the following recent cases the court held that the so-called "100% penalty" assessed against a corporate officer pursuant to section 6672 of the Internal Revenue Code of 1954 or similar provisions of the Internal Revenue Code of 1939—for his failure to pay over to the Internal Revenue Service, Federal income taxes and F.I.C.A. (social security) taxes withheld from the corporation's employees—is in reality, notwithstanding its designation as a "penalty," *a "tax"* originally imposed on the corporation and shifted to the corporate officer upon his default; and that being a *tax due to the United States*, the liability of the corporate officer therefor is not dischargeable in bankruptcy. *Lynn* v. *Scanlon*, 234 F. Supp. 140 (E.D.N.Y.); and *Sherwood* v. *United States*, 228 F. Supp. 247 (E.D.N.Y.).

We think that the principle of the above-cited cases is also applicable to the present petitioner's liability for the "addition to tax" here involved.

Based on all the foregoing, we hold that petitioner, Myron Hamar is personally liable as a transferee of the decedent's estate for the unpaid deficiency in estate tax and addition to tax as determined by the Commissioner, plus interest thereon according to law (including both pre-petition-in-bankruptcy interest and post-petition interest). And we further hold that none of said liability was extinguished or terminated by his discharge in bankruptcy.

*In docket Nos. 2088–62 and 3726–62, decisions will be entered for the respondent.*

*In docket No. 3727–62, decision will be entered for the petitioner.*