COCA–COLA BOTTLING COMPANY OF
TUCSON, Inc., Petitioner,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 18922.

United States Court of Appeals
Ninth Circuit.

July 13, 1964.

Gerald Jones, A. O. Johnson, Holesapple, Conner, Jones, McFall & Johnson, Tucson, Ariz., Scott P. Crampton, Richard S. Doyle, Korner, Doyle, Worth & Crampton, Washington, D. C., for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Earl J. Silbert, Norman Sepenuk, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before HAMLEY and BROWNING, Circuit Judges, and TAYLOR, District Judge.

HAMLEY, Circuit Judge.

This petition to review a decision of the Tax Court involves the liability of an Arizona corporation, as transferee of another Arizona corporation, for the unpaid federal income and excess profits taxes of the transferor.

The transferee is Coca-Cola Bottling Company of Tucson, Inc., an Arizona corporation. The transferor, now dissolved, was Crystal Coca-Cola Bottling Co. (Crystal), also an Arizona corporation. The unpaid taxes of Crystal for which it is sought to hold Coca-Cola Bottling Company of Tucson, Inc., are for the calendar years 1951–1954, and part of 1955. Transferee tax liability for those years is governed by section 6901 of the Internal Revenue Code of 1954 (Code), 26 U.S.C. § 6901.

In its decision reported at 37 T.C. 1006, the Tax Court sustained the Commissioner's determination that Coca-Cola Bottling Company of Tucson, Inc., is liable, as transferee, for Crystal's unpaid taxes for the indicated years.[1] The company has petitioned to review that decision. As will appear later in this opinion, the critical question to be decided is whether, on November 1, 1955, at the time of the transfer from Crystal to petitioner, Crystal was insolvent. If so, petitioner is liable as transferee.

The facts necessary to be considered in deciding this question are not in dispute. At all pertinent times prior to November 1, 1955, all issued and outstanding shares of the capital stock of Crystal, consisting of five hundred shares, were owned by George Martin, the president of that corporation. On July 23, 1955, Martin entered into a written agreement with Samuel A. Gersten and Lawrence D. Mayer relative to the sale by Martin of all of his shares of stock of Crystal to petitioner, a cor-

---

1. In a subsequent decision the Tax Court fixed the amount of the company's de- ficiencies arising as a result of this liability, at $50,872.16.

poration then being organized by Gersten and Mayer. The agreement was thereafter modified by a supplemental agreement executed on October 26, 1955.

The agreement, as amended, provided that on November 1, 1955, Martin would transfer to petitioner all of the outstanding shares of stock of Crystal in consideration of petitioner's promissory note for $1,450,000, secured by a pledge of the shares of stock of both the old and new companies. The agreement further provided that, after November 1, 1955, petitioner would have the right to liquidate and dissolve Crystal and to obtain a release of the collateral pledge of stock of that company " * * * solely Upon Condition that all of the assets of the old company, including all Bottler's franchises are merged and transferred into the new company with due diligence and in accordance with the statutes of the State of Arizona. * *· * "

Also included in the agreement, as amended, was the following provision:

"[Martin] agrees to save, indemnify and hold harmless both the Buyer and the said old and new corporations [i e., Crystal and Petitioner] against any and all claims for income taxes or any other kind of tax, interest and penalties claimed by or due to the United States or any state or municipality by the old corporation and, further, against any and all claims of any description or nature against the old corporation or against the real property and assets sold hereunder, arising from or by reason of any matters or thing occurring prior to the date of closing. Any such claim or liability paid by Buyer may, at Buyer's option, be either collected from [Martin] or deducted from payments due hereunder, * * * "

After petitioner was organized, it ratified and adopted the agreement. On November 1, 1955, pursuant to the agreement, petitioner acquired Martin's stock. Immediately thereafter, petitioner's officers were authorized to transfer "all assets owned" by Crystal to petitioner and dissolve it. On December 9, 1955, all assets were transferred, effective November 1, 1955, to petitioner, according to this authorization. Crystal, which was not a party to the agreement described above, received no consideration for this transfer.

Section 6901 of the Code, under which transferee liability was imposed upon petitioner under the facts summarized above, neither creates nor defines a substantive liability. It provides merely a procedure by which the Government may collect, from a transferee, the unpaid taxes of the transferor for which under state law, the transferee is liable. Comm'r of Internal Revenue v. Stern, 357 U.S. 39, 42, 45, 78 S.Ct. 1047, 2 L.Ed.2d 1126.

As the transfer here in question occurred in Arizona, the law of Arizona governs in determining whether, under the circumstances of this case, petitioner is liable for the taxes in question, as the transferee of Crystal. The law of Arizona pertinent to this inquiry is stated as follows in Love v. Bracamonte, 29 Ariz. 227, 235, 240 P. 351, 353; modified in a respect not here material, 29 Ariz. 357, 241 P. 514:

" * * * the settled law of this jurisdiction, and generally, is that a transferee of an insolvent corporation takes the assets of such corporation subject to the payment of its legitimate debts and holds the same in trust for that purpose * * * " [2]

Before the Tax Court, petitioner argued that the element of insolvency of the transferor, Crystal, essential to transferee liability under the above-stated rule, is lacking. This is true, petitioner contended, because on and after November 1, 1955, Crystal still owned. and

---

2. This rule of law is also, in effect, now established by statute in Arizona. See Ariz. Rev.Stat.Ann. (Uniform Fraudulent Conveyance Act), §§ 44–1001, 44–1002, 44–1004 and 44–1009.

possessed an "asset" that was sufficient to satisfy all its tax liabilities. This "asset," asserted petitioner, was Martin's promise of indemnity contained in the agreement of July 23, 1955, as amended, the essential part of which is quoted above.

The Tax Court rejected, on two grounds, the contention that the indemnity referred to in this agreement constituted an "asset" in the hands of Crystal at the time the notice of transferee liability was issued. Accordingly, that court held that Crystal was rendered insolvent by the transaction whereby petitioner acquired the assets of Crystal without consideration to the latter and thus, under Arizona law, petitioner became liable as transferee for Crystal's unpaid taxes.

One ground for rejection of petitioner's contention was that since Crystal was not a party to the agreement between Martin, Gersten and Mayer, and since, in the view of the Tax Court, Crystal was not intended to be benefited or protected by the indemnity which was a part of that agreement, such indemnity was not an "asset" of Crystal which prevented it from becoming insolvent. The second ground on which the Tax Court rejected the contention that the indemnity in question was an asset of Crystal on November 1, 1955, was that, assuming that the indemnity was ever an "asset" of Crystal, it was transferred to petitioner when Crystal was liquidated.

■ Regarding the first of these grounds, the manifest purpose of the indemnity agreement was to protect the purchasers against the possibility that the value of the underlying assets of the stock in Crystal, which they were purchasing for a fixed price, might be impaired by liens or claims for unpaid taxes. To achieve this protection, it was agreed that the buyers could sue Martin directly on his promise or deduct the tax liability from the payments that might be owed Martin under the agreement. Additionally, the inclusion of "the old corporation" in the wording of the indemnity provision manifested an intention of the parties that the new owners of Crystal could cause Crystal to sue in its behalf to make good Martin's promise to pay Crystal's unpaid taxes. Since the agreement conferred this right of action upon Crystal, it follows that, in this sense, Crystal was an intended beneficiary of the promise.[3]

■ Nevertheless, since it was understood at the time the agreement was entered into that Crystal was to be liquidated and thereafter dissolved, and since it was manifest that the conferring of a right of action upon Crystal was done only for the protection of Crystal's purchasers, it must have been intended by the parties that the indemnity would be a benefit to Crystal only as long as Crystal remained a viable corporation. To construe Martin's promise, insofar as it indemnified Crystal, as existing for a longer period of time than this, is to give greater effect to the terms of the agreement than the parties obviously intended. Whether we interpret the promise to Crystal as terminated when the entire transaction was consummated, or whether we construe the entire transaction as resulting in a transfer of that promise to petitioner, it is clear that petitioner is the only party with enforceable rights under the contract now that

3. One who is not a party to a contract and who does not provide consideration therefor, can be a third party beneficiary to the contract only if it was intended by the parties of the contract to directly confer a benefit upon him. Steward v. Sirrine, 34 Ariz. 49, 267 P. 598. If one is only incidentally benefited by a contract, where the intent of the parties to the contract was to benefit themselves or someone else, he cannot be a third party beneficiary. Irwin v. Murphey, 81 Ariz. 148, 302 P.2d 534; Seargeant v. Commerce Loan & Inv. Co., 77 Ariz. 299, 270 P.2d 1086.

In this case, although the manifest purpose of the contract was to benefit the buyer of Crystal's stock, it cannot be said that Crystal was only an incidental beneficiary, since the parties contemplated that Crystal might sue Martin for breach of his promise.

Crystal has ceased to be a viable corporation.

The crux of petitioner's argument is that Martin's promise to indemnify the purchasers of Crystal amounts to a compliance with Ariz.Rev.Stat.Ann. § 10–361.[4] This section among other things, imposes upon those who would dissolve a corporation the duty to make adequate provision for the protection of the corporation's creditors. Ariz.Rev. Stat.Ann. § 10–361(B) provides that one permissible way to make provision is to cause a financially responsible person to assume or to guarantee the corporation's debt. The purpose of section 10–361 is to protect creditors.

But the indemnity agreement in this case was designed only for the purpose of protecting the corporation's purchasers. We find no basis for interpreting Martin's promise as an assumption of any part of Crystal's debts or as an extension of a guarantee to Crystal's creditors that they would be paid. All Martin's promise does is to assure Crystal's purchasers that Martin will restore to them that part of the bargain that they may lose as a result of creditors' claims against Crystal, including the tax claims here in question. This indemnity agreement is therefore not such an agreement as would satisfy the requirements of section 10–361.

Petitioner calls attention to the fact that it offered expert testimony by a former judge of the Arizona Supreme Court to the effect that Crystal, in his opinion, was not insolvent at the time of the transfer to petitioner. Petitioner now argues that the Tax Court erred in disregarding this "uncontradicted and unimpeached testimony where it is not shown by analysis to be incorrect and where the trial court has no particular knowledge of its own on the issue."

This argument overlooks the fact that not only is the Tax Court qualified to determine the effect of Arizona law in this litigation; it is required to do so. The fact that the Tax Court's opinion concerning the law of Arizona differs from that of petitioner's expert witness does not, by itself, demonstrate that the Tax Court was in error. As we have already pointed out, it is our opinion that the Tax Court reached the correct legal conclusion.

With regard to the second ground on which the Tax Court sustained the deficiency determination, we hold that the finding of that court that the indemnity given to Crystal by Martin was transferred to petitioner in connection with Crystal's liquidation, is not clearly erroneous.

Under the agreement between Martin, Gersten and Mayer, petitioner was entitled to liquidate Crystal " * * * solely Upon Condition that all of the assets of the old company, including all Bottler's franchises are merged and transferred into the new company. * * *" Immediately after the transaction with Martin had been completed on November 1, 1955, Crystal's president advised the directors of that company that the liquidation and dissolution proceedings were

4. Ariz.Rev.Stat.Ann. § 10–361 reads:
  "A. A corporation, including any corporation incorporated under title 40, having discharged or made adequate provisions for the discharge of its obligations, may be dissolved at either an annual or special shareholders' meeting by a two-thirds vote of the outstanding shares of stock, or by the unanimous written consent of all shareholders, but a corporation incorporated under title 40 shall first obtain approval of the dissolution by the corporation commission before dissolution may be accomplished.

  "B. Adequate provisions for the discharge of obligations within the meaning of this section shall be considered to have been made if payment thereof has been assumed or guaranteed in good faith by one or more financially responsible corporations or other persons, or by the United States or an agency thereof. The method provided in this section shall not be considered the exclusive means of making adequate provision for the discharge of obligations."

to commence immediately, but since "all assets" of Crystal would not be transferred to petitioner until the completion of such proceedings, Crystal would permit petitioner to use its assets without reimbursement during the period of liquidation. The president of Crystal also recommended to the directors that Crystal be dissolved and liquidated " * * * and that its assets be transferred at the earliest possible time * * * " to petitioner.

Petitioner asserts that while the minutes of the meeting of the Crystal stockholders refer to a transfer of "its assets," the parties " * * * have stipulated *only* that 'all balance sheet assets' were transferred. * * * " (emphasis in petitioner's brief). They did not, however, stipulate that the only transfer was of balance sheet assets. The latter assets had a net value of only $380,717.91, whereas the purchase price of the Crystal stock sold by Martin was $1,450,000. Among the assets not appearing on the balance sheet were Crystal's franchises, concededly transferred to petitioner.

In our view, the stipulation in no sense stands in the way of the Tax Court's finding that " * * * all of Crystal's assets were transferred and delivered to petitioner, effective as of Novmber 1, 1955." If the indemnity Martin gave Crystal was an asset of that company it was transferred to petitioner as of that date, rendering Crystal insolvent.

The final argument advanced by petitioner is that the Commissioner failed to keep alive his claim against Crystal and that, therefore, he may not now assert a claim against petitioner. The pertinent facts are that on November 22, 1954, prior to the transfer of assets here involved, Crystal and petitioner executed a consent under which the period for assessment of any income, excess-profits or war-profits taxes of Crystal for the year 1951 was extended to June 30, 1956. After the transfer was made, petitioner, as transferee of Crystal (dissolved), executed additional consents under which the periods were extended to June 30, 1960.

The notice of liability was issued to the taxpayer on October 15, 1959.

 These facts show that the Commissioner could have assessed taxes based on transferee liability against petitioner as late as June 30, 1957, since section 6901(c) (1) of the Code allowed assessment of petitioner's liability as transferee to be made up to a year after the period of limitation had expired against Crystal. Section 6901(d) (1) of the Code allowed the Commissioner and petitioner to consent to extend the time during which the assessment could be made, if the consent were entered into within the period of limitation set according to section 6901(c). There is no requirement that, in order for the Commissioner to have preserved his right against petitioner during the extended time that he also must have obtained a similar extension from Crystal. Not only is this not required, but in this particular case, it would have served no purpose for the Commissioner to do so, since Crystal no longer had any assets out of which the tax liability could be paid.

Affirmed.