NATIONAL TAX CONSULTANTS, INC.; LORRAINE T. FOSTER, TRANSFEREE OF ASSETS OF NATIONAL TAX CONSULTANTS, INC.; KARL L. FOSTER FINANCIAL RECOVERY SYSTEMS, INC., TRANSFEREE OF ASSETS OF NATIONAL TAX CONSULTANTS, INC., Petitioners v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT; KARL L. FOSTER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
National Tax Consultants, Inc. v. Commissioner
Docket Nos. 4646-85, 4647-85.
United States Tax Court
T.C. Memo 1987-58; 1987 Tax Ct. Memo LEXIS 54; 52 T.C.M. (CCH) 1529; T.C.M. (RIA) 87058; January 27, 1987. Karl L. Foster and Lorraine T. Foster, pro se. John W. Schmittdiel, for respondent. DINAN
MEMORANDUM OPINION DINAN, Special Trial Judge: These cases were assigned pursuant to the provisions of section 7456(d) (redesignated as section 7443A(b) by the Tax Reform Act of 1986, Pub. L. 99-514, section 1556, 100 Stat.    ) of the Code and Rules 180, 181 and 182. [1] For convenience and clarity, the findings of fact and conclusions of law have been combined in this opinion. Respondent determined a deficiency in National Tax Consultants, Inc.'s (NTC) Federal income tax for 1980 in the amount of $1,361 and additions to tax pursuant to sections 6651(a) and 6653(a) in the amounts of $340 and $105, respectively. He determined deficiencies in Karl Foster's Federal income taxes for the years 1980 and 1981 in the amounts of $3,098 and $22.00, respectively *56 and an addition to tax pursuant to section 6653(a) for 1980 in the amount of $155. Respondent also determined that Lorraine Foster is liable as a transferee for the 1980 Federal tax liability of NTC. [2]
After concessions by the parties, the issues remaining for decision are (1) whether NTC should have capitalized expenses incurred in the construction of an office, (2) whether NTC should have capitalized $312 it spent in 1980 to purchase a carrying case for its audio-visual equipment, (3) whether NTC may deduct the amount it paid to insure an automobile used by Lorraine Foster, (4) whether NTC is liable for additions to tax pursuant to sections 6651(a) and 6653(a), (5) whether the amount spent by NTC to insure the car used by Lorraine Foster should be included in Karl Foster's gross income in 1980 if it is determined that such amount was not a business expense of NTC in 1980, (6) whether Karl Foster received unreported income from NTC in 1980 and 1981, (7) whether Karl Foster is entitled to *57 a deduction for automobile expenses of $2,400 on his 1980 return, (8) whether Karl Foster is liable for an addition to tax for 1980, pursuant to section 6653(a) and, (9) whether Lorraine Foster is liable as a transferee for the 1980 tax liability of NTC. Some of the facts in these consolidated cases have been stipulated. The stipulations of fact and exhibits attached thereto are incorporated herein by this reference. At the time petitioners filed their petitions in these cases, they resided in or had their principal place of business in Blaine, Minnesota. In 1980, Karl Foster was the president of NTC and owned 550 of the 1,000 shares of common stock outstanding of NTC; Lorraine Foster was secretary-treasurer of NTC and owned the remaining 450 shares of the NTC common stock. NTC was in the business of conducting tax seminars nationwide and giving tax advice. Prior to 1980, Mr. and Mrs. Foster lived in Anoka, Minnesota, where they conducted the business of NTC out of an office that they maintained in their home. In 1980, they sold their residence in Anoka and purchased a home in Blaine, Minnesota. The Blaine residence was not suitable to both the Fosters' and NTC's needs *58 but it did have a basement which could be adapted to NTC's needs. Lorraine Foster was the owner of record of the Blaine residence. On September 1, 1980, NTC entered into an agreement with Lorraine T. Foster to lease office space in the basement of the Blaine residence. During September and October of 1980, NTC spent $5,240.68 to convert the basement of the Blaine residence into an office. That amount included expenditures for building materials, the installation of a bathroom and central air conditioning, including electrical wiring and the purchase of a cabinet with a wash bowl for the bathroom. NTC conducted its business out of the office basement until 1984 when it declared bankruptcy and ceased doing business. NTC contends that these expenditures were repairs to the basement and therefore should be currently deductible. Generally, expenses incurred to repair a capital asset are currently deductible. An expense incurred to renovate, make alterations, replace, or improve a capital asset however, must be capitalized. Sec. 1.162-4, Income Tax Regs. In Illinois Merchants Trust Co. v. Commissioner,4 B.T.A. 103, 106 (1926), we stated: In determining whether an *59 expenditure is a capital one or is chargeable against operating income, it is necessary to bear in mind the purpose for which the expenditure was made. To repair is to restore to a sound state or to mend, while a replacement connotes a substitution. A repair is an expenditure for the purpose of keeping the property in an ordinarily efficient operating condition. It does not add to the value of the property, nor does it appreciably prolong its life. It merely keeps the property in an operating condition over its probable useful life for the uses for which it was acquired. Expenditures for that purpose are distinguishable from those for replacements, alterations, improvements or additions which prolong the life of the property, increase its value, or make it adaptable to a different use. The one is a maintenance charge, while the others are additions to capital investment which should not be applied against current earnings. * * * (Emphasis added.) Here, NTC made improvements to a basement so that the basement could be used as an office. The improvements had a useful life which extended beyond the year of purchase. This is clearly not maintaining the property in operating *60 condition, but is the adaption of the property to a different use. Because the expenses were incurred to adapt the use of the basement to use as an office, they must be capitalized. Accordingly, we find for the respondent on this issue. NTC spent $312 for a carrying case for its audio-visual equipment in 1980 and deducted that amount as a current expense. Respondent determined that the purchase of the carrying case was not a current expense but had to be capitalized. An expense incurred to acquire equipment with a useful life substantially beyond the taxable year ordinarily must be capitalized. Section 1.263(a)-2(a), Income Tax Regs. The burden of proof is upon the petitioner to show that the Commissioner's determination is incorrect. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). NTC has failed to carry its burden, and we find for the respondent on this issue. Respondent also disallowed the cost of automobile insurance for Lorraine's car that was paid by NTC. The Fosters operated two cars. One was used exclusively for NTC business. Mr. Foster testified that the second car, Lorraine's car, was used 100 percent to run NTC's errands, but it was the only *61 car the Fosters had for their personal use and petitioner has admitted that there were some personal trips to the grocery store. Using our best judgment on the basis of this record, we conclude that Lorraine's car was used 75 percent for business purposes and 25 percent for personal reasons. Therefore, NTC may deduct 75 percent of the cost of the automobile insurance. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Respondent's determinations herein are presumptively correct and the burden is on petitioners to show that they are incorrect. Welch v. Helvering,supra;Avery v. Commissioner,574 F.2d 467, 468 (9th Cir. 1978); Rule 142(a). NTC did not address itself to the additions to tax determined by respondent pursuant to sections 6651(a) and 6653(a) and we, therefore, find for respondent on those issues. In the case at Docket No. 4647-85, after concessions by respondent, we are asked to decide whether Mr. Foster is required to include in his gross income for 1980, the amount paid by NTC to insure Lorraine Foster's automobile, whether he had unreported income from NTC for the years 1980 and 1981 in the amounts of $2,250 *62 and $548, respectively, whether he is entitled to deduct $2,400 as an automobile mileage expense in 1980, and whether Mr. Foster is liable for an addition to tax in 1980, pursuant to section 6653(a). We found, supra, that NTC was entitled to a deduction of 75 percent of the $300 it paid to insure Lorraine Foster's automobile in 1980. Respondent submits that any portion of the amount of the $300 disallowed to NTC as a deduction in 1980, is includable in Mr. Foster's income in that year. We disagree. The car which NTC paid $300 to insure in 1980 was Lorraine Foster's car. She was the secretary-treasurer of NTC and one of its shareholders in 1980 and the $75 which we have disallowed NTC as a deduction for insurance payments would have been a dividend to Lorraine Foster in 1980 -- not Mr. Foster. [3]
The parties in Docket No. 4647-85 have stipulated that Mr. Foster (hereinafter petitioner) received $5,850 from NTC in 1980; of that amount $3,600 was to reimburse petitioner for expenses he incurred in that year as an officer of NTC. Respondent determined that petitioner *63 is required to include in income in 1980, the difference between $5,850 and $3,600, or $2,250. Petitioner argues that the $2,250 he received from NTC in 1980 and the $548 that he received in 1981 were to reimburse him for amounts that he spent "out of pocket" while conducting the business affairs of NTC. At trial, petitioner introduced into evidence a diary that he contemporaneously maintained as an officer/employee of NTC during 1980 and 1981. The diary lists each of the expenses incurred by petitioner during the years in issue, the place of travel and the person(s) visited. We have thoroughly reviewed petitioner's diary and it is clear to us that he had unreimbursed expenses at least equal to $2,250 in 1980 and $548 in 1981. We also find, on the basis of this record, including our examination of petitioner's diary, that petitioner is entitled to deduct on his 1980 return $2,400 as automobile expenses. Because of respondent's concessions in Docket No. 4647-85 and our disposition of the issues remaining for decision, there is no deficiency in petitioner's 1980 Federal income tax liability and we need not, therefore, address ourselves to respondent's determination of the addition *64 to tax pursuant to section 6653(a). The last issue remaining for decision is whether Lorraine Foster is liable as a transferee for the 1980 Federal tax liability of NTC. Section 6901(a)(1)(A)(i) authorizes the assessment of transferee liability, at law or in equity, in the same manner as the liability for income taxes. This provision does not create a new liability, but rather provides a procedure for enforcing the existing liability of the transferor. Coca Cola Bottling Co. of Tucson v. Commissioner,334 F.2d 875, 877 (9th Cir. 1964), affg. 37 T.C. 1006 (1962); Mysse v. Commissioner,57 T.C. 680, 700-701 (1972). The existence and extent of transferee liability is a question of state law. Commissioner v. Stern,357 U.S. 39, 45 (1958). The elements of such liability are: (1) there has been a transfer of property to a transferee; (2) the transfer was made for inadequate consideration; (3) the transferor was insolvent at the time of the transfer or became insolvent as a result of the transfer; (4) the respondent must establish the value of the property transferred; and (5) the transferor presently owes the tax. Moran v. Commissioner,45 T.C. 528, 529-530 (1966). *65 The burden is upon the respondent to prove each of these elements. Respondent determined that Lorraine Foster received the assets of NTC when NTC filed for bankruptcy and ended its lease with her because the improvements that NTC had made to the basement of Lorraine Foster's house remained there after NTC ceased doing business. Assuming arguendo that there was a transfer of property for inadequate consideration which rendered the transferor insolvent (or which was made when the transferor was insolvent), respondent has not offered any evidence as to the value of the assets transferred by NTC to Lorraine Foster. Proof of value is an essential part of respondent's burden of proof in transferee cases. Estate of Mandels v. Commissioner,64 T.C. 61, 74 (1975). There is no evidence in this record from which we can determine the extent to which Lorraine Foster is liable for the Federal income taxes owed by NTC for 1980. We must, therefore, find for Lorraine Foster on this issue. Decision will be entered under Rule 155 in Docket No. 4646-85.
Decision will be entered for petitioner in Docket no. 4647-85.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent also determined that Karl L. Foster Financial Recovery Systems, Inc. was liable as a transferee for the 1980 Federal tax liability of NTC but conceded this issue at trial.↩
3. Karl L. Foster's filing status on his 1980 Federal income tax return was "Married filing separate return."↩